CRAWFORD v. TEXAS IMPROVEMENT CO. (No. 685.)

(Court of Civil Appeals of Texas. El Paso. May 17, 1917. On Rehearing, June 14, 1917.)

1. LANDLORD AND TENANT ☞285(4) — EVIDENCE—SUFFICIENCY.

In a suit by a lessor to forfeit a lease for nonpayment of rent, evidence *held* to support a jury finding on special issue that the lessee's failure to pay rent as stipulated in the lease was willful and persistent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1197.]

2. LANDLORD AND TENANT ☞112(2) — FORFEITURE OF LEASE—WAIVER BY LANDLORD.

That a lessor accepted the rent due for premises after taking proper steps and filing suit to forfeit the lease for nonpayment of rent is not a waiver of his right to repossess the premises unless the facts show an intention to waive.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 345.]

3. LANDLORD AND TENANT ☞112(1)—FORFEITURE OF LEASE—WAIVER.

The mere fact that a lessor is lenient or indulgent in allowing rent to become overdue is not proof of an election to waive the right to forfeit under the provisions of the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 343, 344, 346, 347, 349.]

4. LANDLORD AND TENANT ☞108(1)—FORFEITURE OF LEASE—WAIVER.

Where a lease provided for forfeiture without notice for nonpayment of rent, the fact that the lessor was indulgent is not proof that forfeiture would not be taken without notice.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 333, 334, 339.]

On Rehearing.

5. LANDLORD AND TENANT ☞285(4)—RENT—EVIDENCE—SUFFICIENCY.

The fact that the lessee could pay the rent, but would not pay it, was sufficient to warrant a finding that his conduct was willful.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1197.]

6. EVIDENCE ☞589—CREDIBILITY—PARTIES.

As the lessee was an interested witness, the jury were at liberty to disbelieve him.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2438.]

7. LANDLORD AND TENANT ☞108(1)—LEASES—FORFEITURE.

The doctrine that courts of equity do not favor forfeitures will not be applied in favor of the lessee who has willfully and persistently defaulted in the payment of his rents, in the absence of some strong counterbalancing equity in his favor.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 333, 334, 339.]

8. LANDLORD AND TENANT ☞108(1) — FORFEITURE OF LEASE—ESTOPPEL.

The fact that a lessee believed that his lessor would not, without notice, forfeit the lease for failure to pay rent, and that such belief was caused by the lessor's conduct, does not raise any equity in favor of the lessee, who has will-

fully and persistently defaulted in the payment of rent, or estop the lessor to forfeit the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 333, 334, 339.]

9. **LANDLORD AND TENANT** ⬤⟶285(5) — **FORFEITURE OF LEASE—FINDINGS.**

A jury finding that the lessee was negligent in believing that the lessor would not, without notice, forfeit the lease for failure to pay rent, was equivalent to saying that such belief was unjustified.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1199.]

10. **LANDLORD AND TENANT** ⬤⟶285(5)—**RENT—FINDINGS—INCONSISTENT FINDINGS.**

Findings that the lease was canceled because of failure to pay December and January rents, that the lessee in good faith believed that the lessor would not cancel for failure to pay rent without notice of intention to do so, that such belief was caused by lessor's conduct, that the lessee was negligent in having such belief, that but for such belief lessee would have paid such rents before they became delinquent, that the lessor never notified the lessee of intention to cancel the lease according to its terms, and that the lessor's conduct was such that it was natural and probable that the lessee would believe that the lessor would not, without notice, forfeit the lease for failure to pay rent, were not in conflict with the finding upon the controlling issue that the lessor was willful and persistent in his failure to comply with his contractual obligations, and did not raise any equity in the lessee's favor.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1199.]

11. **LANDLORD AND TENANT** ⬤⟶108(2)—**RENT—FORFEITURE OF LEASE—TENDER.**

The rule that tender of rent by a lessee immediately after the filing of suit by the lessor is sufficient to relieve against forfeiture of the lease is not a rule of absolute application, and the trial court, in the exercise of its equity powers, may deny it to a willful and persistent violator of his legal obligations.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 335.]

12. **TRIAL** ⬤⟶215—**INSTRUCTIONS.**

Where the jury expressed a desire that the lessee keep his lease but pay all back rents, costs, etc., the court properly refused to instruct them how to answer special issues submitted to arrive at that verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 481.]

13. **LANDLORD AND TENANT** ⬤⟶285(4)—**RENT—EVIDENCE—SUFFICIENCY.**

Evidence *held* to justify a finding that the lessee was negligent in believing that the lessor would not, without notice, cancel the lease for failure to pay rent in accordance with its terms.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1197.]

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Trespass to try title by the Texas Improvement Company against L. M. Crawford. Judgment for plaintiff, and defendant appeals. Affirmed.

Jones, Jones, Hardie & Grambling and Sam B. Gillett, all of El Paso, for appellant. J. F. Woodson, of El Paso, for appellee.

HARPER, C. J. The Texas Improvement Company, a corporation, instituted this suit against L. M. Crawford, in the form of trespass to try title to, for possession of, and for rents due under contract of lease for a certain theater building in El Paso. Defendant answered by plea of not guilty; that he held said property by virtue of a written lease for a period of 10 years, which began September, 1914, at a rental for the first five years of $300 per month; that he had paid and tendered payment of all rents due under the contract, etc. Plaintiff, in reply, says that the lease contains a forfeiture clause for failure to pay rent; that defendant had not paid his rents in accordance with the provisions of the lease, and for such failure plaintiff exercised its option to cancel same.

The case was submitted upon special issues, and upon the answers thereto by the jury judgment was entered for plaintiff. For answer to the interrogatories propounded by the court, the jury found: First, that defendant's failure to pay the rent as stipulated in the lease was willful and persistent; second, that the plaintiff by its conduct led defendant to believe that it would not forfeit his lease for a failure to pay the rent in accordance with the terms of the lease; third, defendant believed in good faith that plaintiff would not cancel his lease without notice of its intention to do so; fourth, that he was led to this belief because of the conduct of plaintiff; fifth, that defendant was negligent in having such belief; sixth, that the defendant would have paid the December and January rent before they became delinquent but for such belief; seventh, that plaintiff did not notify defendant, prior to filing this suit, that it would cancel the lease for failure to pay rent in accordance with the terms of the lease; eighth, that plaintiff canceled the lease because of failure to pay December and January rents; ninth, that the conduct of plaintiff was such that under the circumstances it was natural and probable that the defendant would believe that the plaintiff would not forfeit his lease for the failure to pay rent without first notifying him.

### Findings of Facts.

Appellee, being the owner of the Texas Street Theater, leased it to appellant for a period of 10 years, to begin September 1, 1914; the rental to be $300 per month for five years, and $350 per month for the second five years, payable monthly in advance, without demand. The lease contained the provision that "should any rent remain unpaid for as much as fifteen days after the same shall become due, it is agreed that, without demand therefor, * * * it shall be lawful for the lessor * * * to re-enter the premises, * * * and thereupon this lease shall cease and determine * * * and be utterly void."

Appellant testified:

"I have been behind with my rents the past year a number of times, and Mr. Marr (agent

of the company) has urged me to pay the rent, that they would probably have to bring suit, but he never appealed in his life that I didn't do the best I could. I made my excuses that my rent had been held up here for three years on the Crawford, and that we had other obligations due us that we could not collect. They were glad to have me as a tenant and I kept digging. * * * I do not deny that the board of directors of the Texas Theater Company instructed me in September, 1915, unless I took care of the back rents promptly, they would institute suit. At that time I was very much discouraged, and very much in the notion of giving it up. Mr. Marr and Mr. Bassett were willing to wait until October 28th to get the rent paid. I guess I paid it then. I don't remember the dates I paid the rent. I don't remember how much I was due at that time. * * * I don't deny that I was slow pay, but I have always paid. I don't remember when I paid my rent on time. * * * I knew that taxes were coming due in November, December, and January, and I think, when most of his letters were written, I got him some money. I didn't always pay him in full, but I would respond either right then or as quick as I could. * * * I do not deny that he wrote he had to pay out something like $2,000 the 1st of January. * * * I know we paid the rent, but we have been slow. Circumstances over which I had no control—it was very largely because I did not have the money. I could have gone and mortgaged property and got the money, probably, but I have done a good deal like other people have done to me. It was hard to get the money; business has been bad; our tenants have been slow. I think I am familiar with the lease; I have read it. I am familiar with the part that the lessor may terminate the lease by paying one year's rent. I did not want the owners to become dissatisfied with—and it was not my purpose to delay the rent to make the owners pay me one year's rent to get out. I never was advised either by letter or verbally, at any time, prior to the 8th of February, 1916, that the Texas Improvement Company would seek to forfeit the lease. I did not understand that if suit was brought it would be for cancellation of the lease. I understood it would be for rent, and treated it as such. They always acted as if they wanted me to keep the theater. They intimated that they did not want it."

This suit was filed February 8, 1916. At that time rents were past due for December, 1915, January, 1916, and February, 1916. The February rent, however, was not subject to the default clause until the 15th. After the suit was filed, about February 12th, a check for $600 was delivered to Marr, then agent for appellee. This was returned to appellant, and on the 18th of February was tendered to and received by the attorney for appellee as December and January rents.

By assignments 1, 2, 8, 9, 10, 11, 12, 13, 14, and 15 appellant urges that the judgment should have been for him. Same will be disposed of by a discussion of the several propositions thereunder.

The first and most important question presented by these assignments and propositions is, Should the appellant be relieved from the forfeiture clause in the contract under the facts of this particular case? Where the provision in the lease is merely to enforce prompt payment of money, and if interest will compensate for the want of prompt payment, it will permit the payment to be made,

and the forfeiture set aside, unless the breach of the covenant has been willful or the neglect so culpable as to amount to the same thing. Creamery Dairy Co. v. Electric Park Co., 138 S. W. 1106. See, also, note 69 L. R. A. p. 833, for general discussion.

[1] Appellant has confessed his neglect, and the attendant circumstances in evidence are amply sufficient to support the finding of the jury to that effect.

This disposes of the third, fourth, and fifth, which urge that the answer of the jury that "the failure to pay the rent was willful and persistent"' is contrary to the great preponderance of the evidence.

[2, 3] Appellant further urges that the court should have instructed a verdict for the defendant for the reason that he having paid the rent for January and February to plaintiff's agent, and the money having been retained for several days without objection, it was an acceptance and waiver of right to forfeit. That the lessor accepted the rent due for the premises after taking proper steps—filing suit to forfeit the lease for cause—is not a waiver of his right to repossess the premises unless the facts show an intention to waive. Moses v. Loomis, 156 Ill. 392, 40 N. E. 952, 47 Am. St. Rep. 194. Defendant was several times notified that unless he paid his rent promptly suit would be brought. And the only thing in this record which could have been considered by the lessee as a cause to think the lessor would not enforce his right to forfeit is the mere fact that the lessor had been very indulgent in allowing rents to become overdue, and the weight of authority is that this is not proof of an election to waive. Jones, Landlord & Tenant, § 498.

The sixth is that the finding of the jury that defendant was negligent in believing that plaintiff would not forfeit the lease without notice is contrary to the preponderance of the evidence. The proposition is:

"It appearing from the undisputed evidence that appellant and appellee, by their course of dealing with reference to the payment and receipt of the rent for the Texas Grand Theater, had acted without reference to the clause in said lease providing for a forfeiture of the leasehold for failure to pay rent as it became due for a period of over two years, and at no time during said period had the appellee, by word or act, manifested that it would in fact insist on the strict compliance with the terms of said lease, and that it would declare a forfeiture for failure to pay rent as it became due without first notifying appellant, and the belief of appellant that appellee would not cancel his lease for failure to pay rent in accordance with the terms of the lease without first notifying appellant of its intention to do so was such a belief as an ordinarily prudent person would exercise under the same or similar circumstances, and therefore it was not negligence on his part to have such belief, and the answer of the jury to question 'D' is without evidence to support it."

[4] The answer is that the mere fact that the lessor is lenient or indulgent is not proof of election to waive right to forfeit, and like-

wise is not proof that the forfeit would not be taken without notice, especially in a case like this, where the lease provides that it may be done without notice. Jones, Landlord & Tenant, § 499; O'Connor v. Timmermann, 85 Neb. 422, 123 N. W. 443, 24 L. R. A. (N. S.) 1063, 133 Am. St. Rep. 668.

The seventh is that the court erred in rendering judgment upon the answers of the jury because they are conflicting, in that the finding that the defendant was negligent in believing that the plaintiff would not forfeit without notice is in conflict with findings "second," "fourth," and "ninth," above quoted. In view of the holdings above, that the evidence is sufficient to sustain the finding of the jury that the failure of appellant to comply with the provisions of the contract in payment of rents was willful and persistent, and that this was sufficient cause to forfeit the lease, and in view of the further finding that the facts in the record do not constitute proof of intent to waive its right to forfeit, the effect is to hold that there are no facts in the record upon which to base the findings charged to be conflicting.

The seventeenth urges that the matters shown by the following bill of exception constitute reversible error:

"Be it remembered that on the trial of the above styled and numbered cause, after the jury had retired to consider of its verdict upon the issues submitted by the court, and after the jury had been deliberating some three or four hours in the jury room, the jury sent into court the following request: 'It is the wish of the jury that Crawford be allowed to keep his lease, but pay all back rent, court costs, attorney's fees, and such like. Now comes the jury, and asks instructions how to answer the questions to arrive at that verdict.' And the court sent the following instruction to the jury: 'Gentlemen: Your question cannot be answered by the court;' and then left the room after said communication between the court and the jury, and the jury returned into court the verdict upon which the judgment in this cause is based, and the defendant excepted to the action of the court in overruling the nineteenth ground of defendant's amended motion for a new trial, for the reason that by reason of said facts it was evident that the jury did not follow the instructions of the court," etc.

The proposition is:

"It being apparent from the answers of the jury to the issues propounded, and from the communication sent by the jury to the court, that the jury intended to answer the questions propounded to it by the court in such a manner as to give appellant the possession of the Texas Grand Theater property under his lease, and give the appellee his rents, costs, and attorney's fees, the court erred in rendering judgment on the findings of the jury for appellee for the possession of said property."

It is apparent that appellant would have his verdict regardless of what the jury believed the facts to be upon which to base it. They have found the fact to exist which constitutes the basis for appellee's judgment, yet forsooth, because the jury said they wanted to find for the appellant, counsel would have us set it aside, whether the jury believed the facts justified it or not; in fact,

when the jury find that the facts do not justify it. This is a forceful demonstration of the reason for submitting causes upon special issues.

The eighteenth is without merit.

Finding no error in the record, the cause is affirmed.

## On Rehearing.

HIGGINS, J. I concur in the action of the court in overruling the motion for rehearing, but desire to indicate my views upon what I conceive to be the controlling issues and questions in the case. The action was in trespass to try title filed February 8, 1916, by Texas Improvement Company, appellee, against Crawford, appellant, to recover possession of that portion of a certain building in the city of El Paso known as the Texas Grand Theater. Appellee, by written contract dated April 27, 1914, leased to appellant that portion of the building in which the theater is situated for a period of 10 years from September 1, 1914, for the total sum of $39,000. For the first five years appellant agreed to pay $3,600 per year, payable in monthly installments of $300, payable in advance each month. The lease recites that it was the intention "that the rents payable under this lease shall be payable in monthly installments in advance of the first day of each month, beginning with the first day of the term of this lease." The lease contains the following further provisions:

"Should there be any default in the payment at any time, of any rent due, or any part thereof, or should there remain any rent unpaid for as much as fifteen days after same shall become due, it is agreed that, without demand made therefor, or if said lessee shall assign this lease, * * * it shall be lawful for said lessor, its agents, successors, or assigns, without written notice or demand, into the said premises to re-enter, and the same to have again, repossess, and enjoy as in its first and former estate; and thereupon this lease, and everything herein contained, shall cease, determine, and be utterly void, except the lessor, its agents, successors, or assigns, shall not be deprived of the right to collect all rents which may be then owing the lessor or its assigns, nor shall said lessor, nor its assigns, be thereby deprived of any lawful claim which it may have for damages on account of any such action of said lessee.

"Said lessee covenants and agrees with said lessor, its successors and assigns, as follows: Said lessee will pay the rents in the manner and at the time hereinbefore specified, unless said premises so leased shall be destroyed or rendered untenantable by fire or other unavoidable accident, in which event the rent for such time said premises are so untenantable shall not be paid. * * *

"It is hereby expressly understood and agreed that, if said lessee shall fail to pay the amount of rent herein provided to be paid, or shall fail to pay any installment of said rents, for more than fifteen (15) days after same becomes due, or shall refuse or neglect to do any of the things herein provided to be done or performed by him, or if said lessee shall refrain from doing or performing anything herein agreed to be refrained from being done or performed, then and in such event the said lessor, its successors or assigns, may and can, at its or their option, declare this agreement and lease canceled and annulled, and thereupon this lease, and everything herein con-

tained, shall cease, determine, and be utterly void; but the lessor, its successors and assigns, shall not thereby be prevented from collecting any and all rents which may be due hereunder up to the time of said termination of this lease."

The appellee based its right of recovery upon a forfeiture declared by it on account of the alleged failure of Crawford to pay the rental installments for December, 1915, and January, 1916.

The case was submitted to a jury upon special issues. The issues submitted in the main charge, with the jury's answers, are as follows:

"No. 1: Do you find that defendant L. M. Crawford's failure to pay the rent stipulated in his lease was the result of gross negligence, or was willful and persistent? Answer: Willful and persistent.

"No. 2: Do you find that the plaintiff, by its conduct, if any, led the defendant to believe that the plaintiff would not forfeit his lease for a failure to pay the rent provided for in the lease, in accordance with the terms thereof? Answer: Yes."

At the request of Crawford, other issues were submitted which, with their answers, read:

"Special Issue A: Do you find that the plaintiff in this case canceled defendant's lease because of failure to pay the December and January rents? Answer: Yes.

"Special Issue B: Do you find that defendant in good faith believed that plaintiff would not cancel his lease for failure to pay rent in accordance with the lease without first notifying defendant of its intention to do so? Answer: Yes.

"Special Issue C: Do you find that such belief, if any, on the part of defendant, was caused by conduct, if any, of the plaintiff? Answer: Yes.

"Special Issue D: Do you find that defendant was negligent in having such belief, if any? Answer: Yes.

"Special Issue E: Do you find that but for such belief, if any, defendant would have paid the December and January rents before they became delinquent? Answer: Yes.

"Special Issue F: Do you find that plaintiff ever notified defendant prior to filing suit in this cause that it would cancel the lease for failure to pay the rent according to the terms of the lease? Answer: No.

"Special Issue G: Do you find that the conduct of the plaintiff, if any, was such that, under the circumstances, it was natural and probable that the defendant would believe that the plaintiff would not forfeit his lease for the failure to pay rent according to the terms of the lease without first notifying defendant of such intention? Answer: Yes."

Upon these answers judgment was rendered in favor of appellee for the premises and rents.

Appellant contends that the finding that he willfully and persistently failed to pay the rent stipulated in his lease is contrary to the evidence. Upon this phase of the case the evidence discloses these facts: Appellee's rents were collected by its agents, Jas. L. Marr & Co. Crawford, it seems, lived in Topeka, Kan. The rent for December, 1914, was not paid when due, and on December 18th the agents wrote Crawford in regard thereto, and on December 30th he forwarded check to cover. The rent for January, 1915, was paid January 29th. On February 26th the agents wrote Crawford, requesting payment of the February rent, and he remitted to cover February 27th. The rent for March, 1915, was not paid until remittance was made on April 19th. On April 21st the agents wrote, requesting payment of the rent for that month, stating that the money was needed to pay taxes. On May 4th the agents again wrote Crawford, advising that they had not yet received the April rent. On May 12th the agents again wrote him, requesting remittance of the April rent. Some time between May 12th and May 19th the rent for April was received. On May 19th the agents wrote, requesting payment of the May rent, stating that they would have to have the money promptly, as they had a large interest payment to make in June. On June 1st the agents again wrote, requesting payment of the May and June rent, and advising that they had a semiannual interest payment to make on a $23,000 mortgage against the property which was due the first week of July, and that it would be necessary to have in all the rents up to that time; that they were in urgent need of both these months' rent, and requested Crawford to let them have check by return mail to cover. On June 18th the agents again wrote Crawford that they had to pay this interest, and were in urgent need of the May and June rent, and requested check by return mail. On June 26, 1916, Marr & Co. wired Crawford that the rent for May and June had not been paid, and that the parties insisted on prompt payment, and could not let the account run in that manner. On August 5, 1915, the agents wrote Crawford that his rent was in arrears for four months, and amounted to $1,200; that the company was in urgent need of money, and that it would be impossible for them to let the rent run in that manner; that they did not desire to take any action towards collecting this legally, but if they did not hear from him in a short time would have to do so. They requested an answer by return mail, with one-half of the amount due, if not all. On September 24, 1915, the agents wrote Crawford that the board of directors of appellee had instructed them to notify him that unless the back rents were taken care of promptly they would institute suit against him. On September 25, 1915, Crawford made a remittance, but the amount thereof does not appear. The rent for July, 1915, was paid by remittance made October 4, 1915, in response to previous request from agents. On November 1, 1915, Crawford remitted $300 to cover rent for August. On September 16, 1915, the agents wrote Crawford, reminding him that he was then four months in arrears, and requesting check for at least $600. On November 24th the agents wrote Crawford, requesting that he let them have a couple of months' rent at least, as it was needed very badly. On December 6, 1915,

the agents wrote Crawford that they had some very large payments to make the first of January, amounting to something like $2,000, and that they expected to get most of this from his rent account, and insisted that he send some rent on his account by return mail. On December 28, 1915, the agents wrote Crawford, calling his attention to the fact that early in December they had written him that they had to make some very large payments early in January, and that they would expect him to have his rent account paid up in full; that at the present time there were three or four months due, and that they must insist that some action be taken by him to get his rent paid up. On November 9, 1915, Crawford remitted check for $300, and on January 22, 1916, he remitted a check for $300 to cover the rent for the previous November. In some of the letters written by Crawford to Marr & Co. in response to those noted above, he excused his failure to pay his rent by the statement that the theatrical business had been very bad and that business conditions generally were bad.

Upon a trial of the case, Crawford testified that he had been operating the theater since some time in 1908, when he first rented it; that Mr. Marr had, at different times during the past year, written him to pay the rent; that they would probably have to bring suit, but that Marr had never appealed in his life that he did not do the best he could; that he made his excuses that his rent had been held up here for three years on the Crawford Theater, and that they had other obligations due which could not be collected. He denied that he was waiting for the determination of the Crawford Theater rent suit. He did not deny that the board of directors of appellee instructed him in September, 1915, that they would institute suit unless he took care of the back rents promptly. He said that at one time he was behind $2,000—that was prior to the present lease; that he could not remember when he paid his rent on time; that he paid the rent, but had been slow, because of circumstances over which he had no control, largely because he did not have the money. He admitted that he could have gone and mortgaged property probably, but he had done a good deal like other people had done him. It was hard to get money— business had been bad. His tenants had been slow. That he had borrowed probably during the past year between $30,000 and $40,000 to conduct and carry on the business, part of which had been repaid from time to time.

[5] The evidence detailed shows beyond controversy that Crawford was persistently delinquent in the payment of his rent. But was he willfully so? The rent installments were obligations which he was legally and morally bound to meet in advance of the first day of every month. When a man ought to pay, can pay, and won't pay, this is suf-ficient to warrant a finding that his conduct is willful. Of itself, it evidences a bad motive and evil intention. Especially, when he persists in such conduct without adequate justification. Such persistency evidences that he is acting designedly and intentionally. According to Crawford's own testimony, he could have paid. He seems to have had a good borrowing capacity. But appellant insists that his own uncontradicted testimony shows that business had been bad, the collection of rent slow, etc.

[6] This contention overlooks the fact that he was an interested witness and the jury at liberty to disbelieve him. And, further, if they believed his testimony, they may not have believed that such facts constituted adequate justification for his conduct.

[7] Appellant cites numerous authorities to the effect that courts of equity do not favor forfeitures, and refers to cases where the courts have relieved against forfeitures in lease contracts where there has been a willful failure to pay rent. The correctness of these authorities is unquestioned. But in order to justify the application of this doctrine in favor of a lessee who has willfully and persistently defaulted in the payment of his rents, there should be some strong counterbalancing equity in his favor. It is true appellee was very indulgent to Crawford, and long forebore to exercise its legal rights against him. Crawford evidently deliberately presumed upon its forbearance. He would respond to the requests for the payment of rents only when it seemed likely that the patience and forbearance of his lessor was reaching an end and upon the verge of exhaustion. This indulgence upon the part of appellee should not be seized by the court as a reason for denying the enforcement of its legal rights against a willful and persistent violator thereof. I can see no equity in his favor which would justify the court in so doing. It is true the jury found that the plaintiff, by its conduct, led Crawford to believe that it would not forfeit its lease for his failure to pay his rent; but there was nothing to justify such belief, except the extreme forbearance and indulgence of appellee.

[8] The jury also found that Crawford in good faith believed that plaintiff would not forfeit the lease for failure to pay rent without first notifying him of its intention to do so, and that such belief was caused by plaintiff's conduct. It does not occur to me that this raises any equity in his favor. There was no obligation upon plaintiff's part to give any such notice, and in response to special issue D the jury found that defendant was negligent in having such belief.

[9] This latter finding is equivalent to saying that such belief on defendant's part was unjustified. The answers to issues 2, B, C, E, F, and G are upon minor and noncontrol-

ling questions, and in the light of this record raise no equity in defendant's favor.

[10] Such answers are not in conflict with the finding upon the controlling issue in determining the rights of the respective parties, namely, Was Crawford willful and persistent in his failure to comply with his contractual obligations?

[11] The record discloses that, immediately after the filing of this suit, appellant tendered all past-due rents, with interest and court costs, and has maintained said tender, and upon the trial tendered and paid into court all rent due to that date, together with interest, costs, and attorney's fees. This, it is contended, was sufficient to demand that the court relieve against the forfeiture. Ordinarily this is sufficient. But it is not a rule of absolute application in all cases, and the trial court, in the exercise of its equity powers, might well and properly deny it to a willful and persistent violator of his legal obligations.

The day after this suit was filed, H. R. McClintock, appellant's agent in El Paso, wired him of the filing of the suit. On February 10, 1916, appellant mailed Mr. Marr check to cover the rent for preceding December, which was accepted and received by Marr on February 11th as the rent for the preceding December. On February 12th check for $600 was sent to cover the January and February rent, and was received and accepted by Marr about February 13th. It was held until February 15th, when it was returned to appellant, Marr stating to appellant's attorney, in the meantime, and after he had received said check, that he had sent this check for deposit, to the credit of appellee, or words to that effect. On the 18th day of February, when appellant received the returned check, he wired Mr. Gillett, his attorney, who on that day tendered to appellant's attorney the amount of the returned check, $600, in gold, which was for January and February rent; $300 of this sum was accepted as January rent, and the February rent was refused. Whether or not Marr knew that this suit had been filed when these remittances were received by him is not apparent. Appellant insists that these facts show a waiver of the right of forfeiture. This contention is properly disposed of in the original opinion. No error is shown by the matters complained of in the seventeenth assignment discussed in the concluding portion of the original opinion. It was the sole duty of the jury to find the facts upon the issues submitted to them. Upon the facts so found, it was the duty of the court to render the proper judgment adjudicating the rights of the parties.

[12] The court properly refused to give the instructions requested by the jury.

[13] I regard the evidence ample to support the jury's finding in response to special issue D, that Crawford was negligent.

I believe the proper disposition of this appeal is controlled by the conclusion reached upon the questions above discussed. A very lengthy brief was filed by appellant, together with a supporting written argument. Many authorities are cited and discussed, and in the motion for rehearing it is requested that we discuss the various propositions advanced in the brief and the supporting authorities, and point out the distinguishing features of this case from these authorities. It seems to me that the proper course to pursue is for the court, as best it can, to decide upon the controlling questions in a case and confine the discussion thereto; that it is ordinarily unnecessary to point out the distinguishing features of numerous cited authorities, as it serves no useful purpose, and protracts an opinion to an unconscionable length.

No authorities have been cited herein, as I deem those cited in the original opinion support the conclusion reached. Each member of this court has given careful consideration to the merits of the appeal, and such consideration was given before the original opinion was handed down. The conclusion reached was the result of the consideration so given, and, while such conclusion may be erroneous, such error, if any, is not the result of any lack of proper consideration, nor of a failure to appreciate the strong presentation made in appellant's behalf by his counsel. Ordinarily, I feel that the court is under no obligation to give express assurances of this nature, and do not feel that we are under any obligation to do so in this case, but that it is not inappropriate to do so. The court must make that disposition of an appeal which, as it understands the law, should be made, and this action must be taken without any other consideration than a desire to dispose of the case as the law and facts demand.

The writer has a high respect and regard for appellant's counsel, and is prompted thereby to make the assurance indicated, and because the motion for rehearing would indicate that possibly counsel felt the proper consideration had not been given to the appeal.

The foregoing is adopted by the entire court, and handed down as its opinion on rehearing.