### BROWN et ux. v. HEWITT et al.
### No. 10981.

Court of Civil Appeals of Texas. Galveston.

May 9, 1940.

On Rehearing Aug. 1, 1940.

Rehearing Denied Oct. 3, 1940.

Hardway, Woodruff & Austin, of Houston, for appellants.

Fitzpatrick & Wells, of Houston, for appellees.

GRAVES, Justice.

This appeal is from a judgment of the 55th District Court of Harris County, sitting without a jury, refusing to enjoin the appellees, on appellants' application, from exercising the power-of-sale contained in a $6,620.14-note and deed-of-trust upon a portion of Lots 9 and 10 of Magnolia Park Subdivision No. 1 in Houston, which the latter had executed and delivered to the former on May 25 of 1937; other incidental relief, such as appellants' claim for the value of an abstract of title to such property the appellees held, was also refused, and the court further fixed $500 as a reasonable attorneys' fee for the services appellees' attorneys had rendered them in connection with such note, but specifically provided that no execution should issue against appellants for that item.

At appellants' request, the trial court filed, as in support of its judgment, these findings of fact and law, which are not challenged in any respect deemed material upon this appeal, to-wit:

"Findings of Fact.

"1. On the 1st day of January, 1937, and at all times subsequent thereto, the plaintiffs were and are the owners of the real estate in controversy, occupying and using the same for domestic purposes and the same was and is their residence and business homestead.

"2. Commencing in February, 1933, plaintiffs became indebted to the defendant, Geo. W. Hewitt, in a large sum of money secured by a lien upon said real estate and continued so indebted, but steadily reducing said indebtedness by regular monthly payments to the defendant, until the 25th day of May, 1937, at which time by agreement of the parties the balance owing on said indebtedness was increased by approximately $2,500.00 to cover the costs of improvements upon said premises, the amount of such increase being advanced by Geo. W. Hewitt upon a valid mechanic's lien contract, and the plaintiffs then executed and delivered to said defendant their certain promissory note, and deed of trust to G. W. Hewitt, Jr., Trustee, for the total of such combined amounts, being $6,620.14, with interest thereon at 8% per

annum until paid and being payable in monthly installments of 'not less than $90.00 each', due on the 10th day of each month after date until paid in full, and further containing the usual optional accelerating maturity and 10% attorney's fee clauses in event of default in payment.

"3. That contemporaneously with the execution and delivery of said note and deed of trust, plaintiffs delivered certain abstracts, described in plaintiffs' petition, of the reasonable and actual value of $200.-00 to defendant, who agreed to return them when his lien was completely discharged.

"4. Thereafter between the 14th day of each month in which an installment was due and the 3rd day of the following month (with the exception of the August, 1938, installment which was paid on the 10th) the plaintiffs, without complaint or objection by defendant as to the time, amount, or manner of payment, paid monthly installments of $90.00 each during the months of June–December, 1937 and January–August, 1938, to Geo. W. Hewitt by their personal checks mailed to him at his office and the same were accepted and credited on plaintiffs' indebtedness to him, and that Hewitt was estopped from accelerating the maturity of the note simply for failure to pay on time.

"5. During the month of October, 1937, Hewitt protested to plaintiffs about their buying insurance on their property in dispute other than through his office, and advised them if they bought elsewhere 'they need expect no more favors from him'. They bought elsewhere.

"6. On August 18, 1938, A. T. Norman, now deceased, who was acting for the Browns, advised Mr. Hewitt by letter that the Browns were preparing to pay off their loan and requested Mr. Hewitt to furnish him the correct balance owing Mr. Hewitt. Mr. Hewitt did not furnish such information, and Norman later called Hewitt on the phone and asked permission to examine the ledger account, which Hewitt refused. I find that Hewitt had a right to expect that the Browns expected to pay by the next installment date.

"7. On September 14, 1938, the plaintiffs mailed their check in the amount of $90.00 for the September installment to Mr. Hewitt, who on the same day, it seems, had placed said note in the hands of his attorneys, Fitzpatrick & Wells, for collection and declared the whole amount thereof due and payable but did not agree to pay them the 10% attorneys' fee provided for in said note. On September 15, 1938, defendant received plaintiffs' check and immediately returned the same to them by letter, stating he had elected to declare the whole remaining balance due and payable, plus interest at 10% per annum from September 10 on, unless the entire amount thereof, plus 10% thereof as attorneys' fees, was immediately paid he would commence foreclosing under the deed of trust.

"7a. After the tender, referred to above, Hewitt through his attorneys on October 7, 1938, offered in writing that Hewitt would carry the loan until the original date of maturity at the same rate of interest and would reduce the monthly payments to $85.00 per month, provided the papers were rewritten to eliminate the 'on or before' clause, and if Brown would pay the cost of preparing the papers, and I conclude that he intended and the parties understood that if this were done the acceleration would be waived, waiving of course the claim for attorneys' fees. I find that Hewitt did not expressly promise to pay his attorneys any fees for the collection of the note, but having heard testimony of the services, I have, for the benefit of the record, found that the services rendered and to be rendered are worth $500.00.

"8. No demand for payment of the September installment was ever made by Hewitt on plaintiffs.

"9. At all times prior to receiving the letter from Hewitt's attorneys on September 16th returning their check, the Browns believed and relied on the acts and statements of defendant contained in Finding 4, and, but for such conduct on the part of the said Geo. W. Hewitt, they could and would have paid the September installment on September 10th.

"10. The correct balance unpaid but not due on Hewitt's note on August 15, 1938, was $5,895.14, including principal and accrued interest.

"11. On September 23, 1938, plaintiffs again tendered the $90.00 installment for September and offered to pay in addition any penalty upon said installment, if any, which defendant claimed and was entitled to. This tender was also refused, the defendant insisting on the full amount of principal, interest and attorneys' fees, amounting in all to approximately $6,500.-00.

225

"12. October 7th and again on October 10, 1938, plaintiffs tendered to defendant at his lawyers' office the sum of $5,967.42, and demanded a release or assignment of defendant's lien and also the abstracts in defendant's hands; which tenders were rejected by defendant for the reason that he had elected to declare the full amount due and had placed the note in the hands of his attorneys for collection. At the time of refusing these two tenders defendant offered to waive all penalties and continue the loan paying out at $85.00 per month and 8% interest if plaintiffs would agree to eliminate the 'not less than' clause in the note and pay all costs of preparing new papers. Defendant refused to surrender the abstracts.

"13. Plaintiffs at expense of $250.00 obtained the $5,967.42 tendered to defendant by agreeing to pledge the property in controversy as security therefor, and a short time after the money had been tendered and refused, and after defendant had refused to execute a release or assignment of his lien, plaintiffs were obliged to return the money to the lender. Hewitt had no notice of this, so far as the evidence discloses, until the trial.

"14. At all times since September 14, 1938, and on trial the defendant has consistently declined (except as contained in his counter-tender) to accept any sum less than the full amount of unpaid principal, accrued interest at 10%, and plus 10% attorneys' fees on the full amount; or to execute an assignment of his lien.

"15. On October 5, 1938, G. W. Hewitt, Trustee, at the request of Geo. W. Hewitt, posted the property involved for sale in November, 1938, under the powers of the deed of trust and was proceeding with the sale of same when enjoined by a temporary writ issued out of this cause on the application of plaintiffs. Defendants had no prior notice of the granting of the writ before service upon them.

"16. Defendants at all times knew where the Browns could be easily communicated with by letter, telephone or in person.

"Conclusions of Law.

"1. I conclude that Geo. W. Hewitt, because of his conduct prior to September, 1938, would have been equitably estopped to accelerate the maturity of the remaining installments and claim 10% attorneys' fees from the Browns on September 15, 1938, and until such time as he had demanded payment of the September installment or otherwise brought to the attention of the Browns his intention to exercise his option to invoke the penalties if the payment was not promptly made, but because of the expressed intention of the Browns to pay the debt off and their failure to do so Hewitt was not estopped.

"2. I conclude that plaintiffs are not entitled to injunctive relief, however, because they are here seeking to enjoin the enforcement of the. defendant's deed of trust without making an actual tender of the amount they admittedly owe Hewitt on his note, being unable to do so, except upon the court granting time in which to procure a loan, which plaintiffs have not offered in their pleadings to do and which they have not asked to be permitted to do.

"3. I conclude. that plaintiffs are not entitled to have defendant's deed of trust lien removed as a cloud. on their title, because they have not tendered into court the amount they admittedly owe Hewitt on his note.

"4. I conclude that plaintiffs are not entitled to recover damages for converting their abstracts, because defendant was entitled to retain same until he received the full amount of money due him and plaintiffs made no tender of the money into court.

"5. I conclude that Hewitt is entitled to foreclose his lien by sale and to collect the amount principal, interest, and attorneys' fees. There were no pleadings authorizing the court to make any condition requiring defendant to accept any sum less than that demanded or else have the injunction perpetuated. The plaintiffs admitted their inability to pay the sum they had previously tendered and the court does not feel called upon to make pleadings for the parties which they have not themselves presented. Wherefore, the injunction has been denied."

In addition, there were certain stipulations of fact, both oral and written, the material effect of which is thus stated in appellants' brief: "* * * that the monthly installments provided for in Hewitt's note of $90.00 each were paid to him by plaintiffs' check mailed to him at his office each month between the 14th and the 2nd day of the following month, excepting only the May installment, which was paid on the 11th. It was also stipulated that the amount of $5,967.42 tendered to George W. Hewitt on October 7th and 10th, 1938, was the correct amount of principal and inter-

est up to those dates, but that figure included no attorneys' fees which are in dispute."

Assailing as "errors of law" the quoted conclusions of the trial court, the appellants, through able counsel, thus in substance epitomize their position:

"It is the contention of appellants that George W. Hewitt by his statements and conduct prior to September, 1938, had waived, and was estopped to assert any right he might have under the deed of trust to accelerate maturity of the balance of the note and claim attorneys' fees, without first demanding payment of the September installment, or in some other manner bringing to the attention of the Browns that he wished the installments paid promptly on the due-date according to the face of the note.

"That, without regard to estoppel, appellants were never in default of the September installment, because it was received by Hewitt in the customary manner prior to any declaration of acceleration to them by an overt act and before he had incurred any liability to his attorneys and before they had taken any action in his behalf.

"Never having been in such default as to enable appellee to assert the penalty clauses in his note and deed of trust, appellants' tender of the full amount of principal and interest to appellees and his attorneys on October 7th and October 10th, 1938, was wrongfully refused by them and operated to discharge his deed of trust lien on the property in controversy, or at least to discharge the power of sale therein contained.

"That, even if Hewitt had been entitled to recover 10% attorneys' fees on all or any portion of his note, nevertheless said additional 10% could not be asserted as part of the secured indebtedness upon appellants' homestead, and therefore the tender. in October of the agreed amount of principal and interest was of the full amount of the *secured* indebtedness.

"That, because of the wrongful refusal of the appellees to return the abstracts to appellants after the tender of October, 1938, they are entitled to recover the agreed value of the abstracts, being $200.00."

This court, being unable to see eye to eye with these presentments, under the facts so found, is constrained instead to hold the court below to have been correct, at least in denying the writ of injunction; it is thought the initial vice in these propositions lies in their apparent assumption that—even in the special conduct and course of dealing shown upon the elder Hewitt's part—he was under the duty or obligation of notifying the Browns of the amount of principal and interest then due on their debt to him, in response to their letter—through their attorney—on August 19 of 1938 requesting that information, as a condition precedent to his asserting any of his own legal rights as against them under the note and deed-of-trust; in legal effect to the contrary, it is provided in our statutes, R.S. Art. 5937, secs. 70, 82(2), and 85, and settled by court holdings, in such instances, not only that presentation for payment is not necessary to charge primary obligors, but also that such debtors are presumed to know the status of their own obligations, their creditors being under no bounden duty to advise them in advance of maturity what their obligations will amount to at any particular time.

Moreover, that letter, as the quoted sixth finding recites, did definitely advise that "my clients are preparing to pay this debt in full"; then requested the information upon the amount due "by return mail, upon receipt of which the writer will prepare the proper papers essential to liquidating this debt". Wherefore, since Hewitt stood at arm's length towards appellants' request of him for a statement of the amount they owed, being under no legal duty to furnish it to them, especially as against their antagonistic notification that they were so preparing to pay the debt in full against his preference that it run on, the trial court's finding "that Hewitt had a right to expect that the Browns expected to pay by the next installment date" was sufficiently supported.

In other words, under this sixth one, along with the others of the stated findings with like or similar import, such as those under the court's Nos. 5, 7, and 14, the learned trial Judge was justified—from the evidence—in concluding that a change in and a discontinuance of the indulgent acts of appellees toward appellants, in the carrying of this indebtedness that are set out in the findings, had been broken when appellants so notified the elder Hewitt on August 19, 1938, by direct statement, that they were "preparing to pay this debt in full"; and, further, that thereafter the parties, each in turn, stood upon their legal

rights under the contracts outstanding between them, hence there was no such waiver nor estoppel against the appellees as appellants contend for. Indeed, having thus been directly notified before September 10, 1938, that no more favors, like extending any of the monthly payments on the indebtedness beyond their due-dates, could be expected from the appellees, the appellants failed to pay the installment due on the 10th of that month, whereupon the appellees, choosing to take seriously the explicit announcement that appellants were preparing from August 19th previously, "to pay this debt in full", in turn countered by their move to require strict payment upon the "law day" and to declare the entire debt due, pursuant to the acceleration privilege contained in the face of the note; it is thought the court below was not in error in holding them within their legal rights in so doing, if they saw fit to invoke them. McCray v. Kelly, Tex.Civ.App., 130 S.W.2d 458; Crawford v. Texas Imp. Co., Tex.Civ. App., 196 S.W. 195.

These conclusions, if sound, as they are thought to be, determine the merits of this appeal, and relieve this court of a discussion in detail of many collateral and incidental questions further raised in the brief of the parties; since the appellees did not by cross-action or otherwise in this proceeding seek a recovery upon the obligations involved, and since none was awarded them, thereby reducing the appeal as presented here to the controlling issue of whether or not the trial court erred in refusing the injunction sought, this holding will be limited accordingly to the determination of that inquiry alone.

It follows that, with this construction of it, the judgment should be affirmed; it will be so ordered.

Affirmed.

On Appellants' Motion for Rehearing.

CODY, Justice.

The evidence in this case, and the findings of the court, make it clear that the action of Geo. W. Hewitt in undertaking to exercise his option to accelerate the maturity of the note was not done for the purpose of protecting his debt or preserving its security, but was done to coerce appellants into not paying off such debt, and into surrendering their right to pay it on or before the installment dates, in order to refinance it at a lower rate of interest. It appears that the installment maturing on September 10, 1938, could have been paid by appellants on that day as readily as four days later, and that they had mailed their check to Hewitt, and he had received it on September 10, 1938, before they knew that he would seek to mature the entire indebtedness for merely paying the installment according to their usual course of dealing. In this state of affairs, what was said in Parker v. Mazur, Tex.Civ.App., 13 S.W.2d 174, 175, seems decisive: "The clause as to the maturity of the whole debt was not positive and self-executing, but depended for its vitality upon the will and desire of the owner and holder of the notes, and equity would demand notice of such will and desire before demand should be made for the payment of the entire debt. The failure to give notice of an intended act could not be known except to the payee of the notes, and it was harsh and inequitable for him to exercise the right of acceleration without due notice to the maker of the notes. A court of equity may relieve against a provision for acceleration * * * 'when it is procured by * * * inequitable conduct of the creditor himself.'" (Citing authorities.) And in the recent case of Curtis v. Speck, 130 S.W.2d 348, writ of error refused, we held through Chief Justice Monteith that formal demand must be made for any installment on a debt before the debt can be declared due.

It appears that Hewitt had received payment of the installment, due on September 10, 1938, before he formally attempted to mature the entire indebtedness for failure to pay such installment on September 10, 1938, the law day. But, under the cited authority, Hewitt had no right to mature the entire debt, not having afforded appellants an opportunity to pay the installment before acceleration of the entire indebtedness for failure to pay such installment. Since the debt was not due, the court should have enjoined the sale.

It follows from these conclusions that appellants' motion for rehearing should be granted, the trial court's judgment reversed, and the cause remanded to that court with instructions to issue the injunction as prayed for. Justices GRAVES dissents, believing our original opinion to have been correct.

Rehearing granted, trial court's judgment reversed, and cause remanded with instructions.

GRAVES, J., dissenting.