### PATRICK v. McGAHA.

#### No. 14409.

Court of Civil Appeals of Texas. Fort Worth.

July 10, 1942.

Rehearing Denied Sept. 11, 1942.

Shropshire & Bankhead, of Weatherford, for appellant.

Grindstaff, Zellers & Hutcheson, of Weatherford, for appellee.

SPEER, Justice.

Plaintiff, F. Patrick, sued defendant, Dora McGaha, a negro woman, in trespass to try title to recover about two acres of land situated in the City of Weatherford. The land is adequately described in the petition. Defendant answered with general denial, a plea of not guilty and a cross-action against plaintiff for title and to cancel a deed from the City of Weatherford to plaintiff, under which he claims title. The parties will be designated here as they were in the trial court.

As best we can tell from the record, the property in controversy for many years belonged to defendant Dora McGaha, her brother Tom and two sisters, Annie and Lizzie. All but Dora had married and moved away. Dora occupied it as a homestead. City, State and County taxes had accumulated for 10 or more years; about $250 in taxes were due the City of Weatherford; the City instituted suit for taxes and to foreclose its lien, against all those having an interest in the property. A sale under execution by the sheriff was made and the City bid in the property and took a deed from the sheriff as of date August 15, 1938. Plaintiff Patrick purchased from the City, paying $150 (subject to State and County taxes), and took deed dated January 12, 1940. Plaintiff claims title under his deed from the City of Weatherford.

Dora McGaha (the only defendant in plaintiff's suit, as plaintiff in her cross-action) asserts that plaintiff Patrick took the legal title from City of Weatherford under his deed, only in trust for her; that at her special instance and request, plaintiff purchased it with the parol understanding between them, made prior to and simultaneously with the purchase by plaintiff, that it was for her benefit and that she would repay him all moneys expended in making the purchase. Dora also contends that immediately after the purchase was consummated, plaintiff told her he had bought the property for her and that they then agreed she should repay him at the rate of one dollar per week; that she thereafter began paying plaintiff as per the contract, and paid $7; that she tendered $2 more and plaintiff refused to accept it, and because of said payments made by her and accepted by plaintiff, he was estopped to deny the terms and conditions of their former transactions; she also alleged that the deed from the City of Weatherford to plaintiff was not in the form agreed upon between the parties and asked that it be cancelled and held for naught. She tendered into court the full amount of the purchase money paid by plaintiff along with legal interest, and all sums plaintiff had paid out in connection therewith. Her prayer was, in effect, that the deed from the City to plaintiff be cancelled, that plaintiff take nothing and that she recover title to the land as against the plaintiff.

Three special issues were submitted. The questions and their answers were substantially as follows: (1) Plaintiff Patrick paid to the City of Weatherford (when he took the deed) the sum of $150 at the request of Dora McGaha or some other party or parties interested in the land; (2) at the time plaintiff paid the $150 to the City he had not agreed with defendant Dora McGaha to pay that amount to the City for her to save her home; and (3) after plaintiff paid the $150 to the City of Weatherford, he agreed with defendant Dora McGaha that she could repay to him the sum so paid to the City. Upon this verdict, judgment was entered denying plaintiff any relief, but cancelling the deed from the City to plaintiff and awarding to Dora McGaha title to the land, on her cross-action. From this judgment plaintiff has appealed.

Plaintiff predicates his right of reversal upon 27 points, supported by adequate assignments of error, shown in the motion for new trial. All points relied upon, however, we think may be grouped by us under the following divisions thereof: (1) Error in refusing to give plaintiff's requested peremptory instruction, (2) (not materially unlike the first) error in submitting any issue because there was no testimony to raise an issue of fact, (3) if any issue of fact was raised as to whether plaintiff purchased the property for defendant, it was in violation of the statute of frauds (error in

refusal to give requested instruction and to submit requested special issues), (4) failure to make City of Weatherford a party in an action to cancel its deed to plaintiff, and (5) error in awarding the whole title to defendant Dora McGaha when her brother and sisters had as much interest in it as she had.

Under the applicable Rule 268, Texas Rules of Civil Procedure, we cannot consider the motion for an instructed verdict presented in the first point. It reads. "Now comes the plaintiff herein and requests the Court to charge the jury peremptorily and find for the plaintiff." The cited Rule provides: "A motion for directed verdict shall state the specific grounds therefor." The rule is based upon Rule 50 (a) Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and that rule was construed in Virginia-Carolina Tie & Wood Co. v. Dunbar, 4 Cir., 106 F.2d 383, to mean what the plain language used imports.

However, the second subdivision made by us above raises substantially the same question. That is, that no issue of fact was raised by the evidence authorizing the submission of any issues to the jury. Under this point, plaintiff gets the benefit that he would have gotten if we should consider the first point. We must overrule both contentions. There was no controversy in the evidence that the City did not acquire all of the title owned by defendant and her brother and sisters by its foreclosure of the tax lien and the sheriff's deed, subject to their right of redemption under Article 7283, Vernon's Tex.Civ.Statutes. At the time this suit was filed, all rights of redemption under the cited statute had expired. There is sufficient evidence in the record, which, if believed by the jury, would raise an issue of fact as to whether plaintiff purchased the property from the City for the use and benefit of defendant. True, the testimony is highly conflicting, yet it is the settled rule in this State that in such circumstances if all the testimony be considered in its most favorable light in support of defendant's contention, a verdict in her favor would have found support, no instructed verdict should be given against her. Bearing in mind that defendant, by her cross-action, sought recovery against plaintiff, upon the theory that the purchase by plaintiff from the City was to hold the property in trust for her, that is, his purchase and taking of the deed was for her use and benefit, she testified in substance that she went to plaintiff and told him she was about to lose her home and asked him to buy it in for her and that he said he would do so to keep her from losing her home. She also said that plaintiff came to her house after he bought the property and told her that he had bought it in for her and that he would give her more chances to pay for it than any other one would; that she then told him she would pay him back at the rate of $1 per week until he got all of his money back, and he said all right. That she paid him $7 under that agreement and later tendered $2 more and he refused to take the last amount. The testimony is uncertain as to the dates on which the conversations took place, but several times defendant said she requested plaintiff to buy the property for her and that he later told her he had done so. No other construction could be placed upon the testimony than that the requests of defendant were prior to the time plaintiff purchased it. This assumption is supported by plaintiff's statement that he had done so. Plaintiff's testimony shows the requests of defendant were made while the suit by the City was pending, yet he says he told her that he could not buy it in for her. He said he told Dora he would see about it. He said he did go to the City authorities, got the amount of taxes and costs reduced from about $300 to $150 and bought it for the last mentioned amount subject to unpaid State and County taxes. He also said: "The purpose I had in buying it was not for Dora, but for all four of the children." Again he said "I did it for them (the other three heirs) just as much as I did for Dora." He further testified that he told the City Commissioners, when he was trying to get the amount reduced before buying, that he did not want the property and that he would carry it and do his best to get the negroes to redeem it. He said the property was worth $300 or $350 when he bought it, had enhanced in value and was worth at the time of the trial about $750, and that all he wanted out of it was his money back and for the excess to be divided equally among Dora and her brother and sisters. Our reference to the testimony by no means covers all but certainly it was sufficient to raise the question of a trust created prior to the time plaintiff acquired the title.

240

As we view the special issues submitted and their answers, the real point in controversy was not determined. Dora was the only one of the previous owners made a party to plaintiff's suit. By his own testimony he shows that he bought the property for the use and benefit of them all, including Dora. He could not divest them all of the equitable title created by the trust, without making them parties to the suit. Nor does it follow that because the other three original owners who had an interest in the trust were not parties defendant, Dora McGaha could not recover in her cross-action; yet the issues were so worded that the answers do not determine Dora's rights, and no judgment in her favor could be based upon them.

The First Special Issue reads: "Do you find from a preponderance of the evidence that the plaintiff F. Patrick paid to the City of Weatherford the sum of $150.00 at the request of Dora McGaha, or any other party, or parties, interested in said land?" The answer was: "Yes." The issue and its answer could mean several things not decisive of the issue between the parties to this suit. The meaning of that issue and answer is made more questionable by the second issue and its answer, which are: "Do you find from a preponderance of the evidence that prior to the time that F. Patrick paid to the City of Weatherford the sum of $150.00, that he had agreed with the defendant Dora McGaha that he would pay said amount to the City for her to save her home?" The answer was: "No."

■ To sustain judgment for defendant on her cross-action we think it should be ascertained by findings that plaintiff purchased the property from the City at the request of defendant or some person acting for her and that there was either an express or implied promise on her part to repay to plaintiff what he was out; that such agreements, contracts and promises were made prior to or simultaneously with the purchase or in some other definite manner ascertain that the here asserted trust resulting from the purchase by plaintiff had its origin prior to or at the time plaintff purchased from the City of Weatherford. As above pointed out, there is evidence upon which such inquiries could and should have been made. In this connection we may say that all such agreements and contracts could have been made orally without infringing the statutes of fraud. We

think the verdict elicited by the special issues did not support the judgment entered. There are other phases of the judgment which we shall later notice.

■ Twelve of the points urged by plaintiff for reversal challenge in one form or another the judgment as entered because the agreements and contracts relied upon by defendant to establish her asserted trust are violative of the statute of frauds. We are not in accord with plaintiff's contention in this respect. If the whole case hinged upon the third special issue and its answer plaintiff could find consolation in it. That issue and the answer read: "Do you find from a preponderance of the evidence that after plaintiff F. Patrick paid to the City of Weatherford the sum of $150.00 he agreed with defendant, Dora McGaha, that she could repay him the said sum of $150.00?" The answer was: "Yes." This may mean that plaintiff renewed or again agreed at the time inquired about to something defendant claims he had agreed to before he purchased the property. In any event we think that if it had been established that plaintiff purchased the property for defendant, as she testified he did, and later informed her that he had done that thing, a promise to repay him by defendant would necessarily be implied. The testimony of defendant does indicate that the terms of repayment were agreed upon after the purchase, but we believe that alone would not violate the statute of frauds, as provided by Article 3995, Sect. 4.

■ We overrule the contention made by plaintiff that before the deed from the City to him could be cancelled the City of Weatherford must be made a party to the suit. The rule of law sought to be applied in this contention is set out in Business Men's Oil Co. v. Priddy, Tex.Com. App., 250 S.W. 156, where it is held that all persons whose rights, interests or relations with the subject matter of the suit would be affected by a cancellation of an instrument, must be made parties before a final judgment will affect them. We fail to see how the City has any interest or rights to be affected in this suit. However, in this connection, we find nothing in the record to justify the judgment as entered, cancelling the deed. Moreover, to our minds, a cancellation of the deed would destroy the rights of both plaintiff and defendant. Without the deed, title would be and remain in the City, and plaintiff would have received nothing for the money paid,

and certainly defendant would not have any equitable rights under a deed of conveyance which the court in effect held void. She could not establish an equitable trust in plaintiff by virtue of their former contracts and agreements because of his having purchased the property for her and taking the legal title in his own name and at the same time procure a cancellation of the very instrument under which she must claim, upon the ground that it was void.

We have definitely concluded that the jury verdict does not support the judgment as entered, and that for the reasons mentioned, all of which are raised by the motion for new trial, the trial court erred in not setting aside the judgment entered and granting a new trial.

In view of the fact that this case must be tried again, we think it proper to state that there was no error in refusing to submit plaintiff's requested charge and the requested issues complained of. Nor is there any merit in plaintiff's contention that defendant should have been denied a recovery for herself solely upon the ground that her brother and sisters formerly held an interest in the property with her. Irrespective of the expressed intentions of plaintiff that he was unwilling for her to recover the whole of the property to the detriment of her brother and sisters, all interests of the brother and sisters as well also that of defendant, were taken away from them by the foreclosure suit and sale, save and except their redemptive rights under the statute above cited. The time had expired for such redemption when this suit was instituted. If defendant had any rights, they must depend upon the asserted trust created by the related transactions with plaintiff and his deed from the City.

 The advisability of appellate courts discussing points which may arise upon a subsequent trial when cases are reversed and remanded may well be questioned in some instances, but we believe that with certain restrictions we may be of some service to trial courts if these matters be pointed out. Much has been written by the courts and text writers on the subject of trusts. They are of many kinds; as we view the record in this case the type sought to be established may be termed an express trust. In such cases where the subject matter is real estate, it is essential that the legal and equitable title be separated, the former to be vested in the trustee and the latter in the beneficiary. 42 Tex.Jur., page 611, sect. 10. This may be done as a result of the words and acts of the parties transpiring prior to or at the time the legal title vests by virtue of the written conveyance. No particular words or form are prescribed by law by which the result may be accomplished, but the intention of the parties will control, when applied by well settled rules of construction. Ibid, Trusts, sects. 12, 15, 16 and 18.

 The principles involved here are not new to our jurisprudence. It is important, however, that we keep constantly in mind our statute of frauds above cited. That statute, however, does not prevent parties from making oral agreements to purchase lands jointly, although the title thereto be taken in the name of one of them; in such instances it is none the less property of both, the one in whose name the legal title is taken, becomes, as a matter of law, trustee for the other. Gardner v. Randell, 70 Tex. 453, 7 S.W. 781, citing as authority on the point the early case of Parker v. Coop, 60 Tex. 111. The rule there announced has been consistently followed down to the present time. The doctrine is reaffirmed by the Supreme Court in Wright v. Wright, 134 Tex. 82, 132 S.W.2d 847, where it was held that the trust must be created by contract between the parties before or at the time the deed of conveyance is made to the alleged trustee. The one asserting the trust must have either furnished the money with which all or a part of the purchase price was paid, or must have obligated himself by an enforceable contract to pay the same at a later date. The trust, if it can have effect, must arise out of the transaction by which the legal title was taken in the name of the alleged trustee. The trust may exist in favor of one who in fact has not furnished the money with which the purchase price was paid. He may obligate himself by an enforceable contract to repay all or a part of the purchase price and thus acquire the equitable interest therein, to that extent. His obligation to pay is equivalent to furnishing the purchase money. Bailey v. Harris, 19 Tex. 108; Lucia v. Adams, 36 Tex.Civ.App. 454, 82 S.W. 335; Vicars v. Quinn, Tex.Civ.App., 154 S.W.2d 947. This court recently had occasion to give considerable thought to the doctrine of trusts as indicated by the

opinion written by Chief Justice McDonald in Elbert v. Waples-Platter Co., Tex.Civ. App., 156 S.W.2d 146, writ refused for want of merit. What was there said is applicable to some of the essential elements of the instant case.

For the reasons hereinabove discussed, the judgment of the trial court is reversed and the cause remanded for another trial.