**HARVEY v. ELDER.**

No. 11563.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 21, 1945.

Rehearing Denied Dec. 19, 1945.

G. Woodson Morris and E. B. Simmons, both of San Antonio, for appellant.

Willis W. Ellison and Miller & Miller, all of Gonzales, for appellee.

NORVELL, Justice.

This is a malpractice case. Judgment below was for the defendant, Dr. N. A. Elder. Mrs. Hattie B. Harvey, the appellant, asserts here that the trial court erred in giving a peremptory instruction to the jury, for the reason that the motion therefor did not comply with the provisions of Rule 268, Texas R.C.P., which requires that, "A motion for directed verdict shall state the specific grounds therefor."

The motion filed in this case did not meet the requirements of the rule, and had the judge overruled the same, a point of error in an appellate court could not be predicated upon such action. Atlantic Greyhound Corporation v. McDonald, 4 Cir., 125 F.2d 849; Wright v. Carey, Tex.Civ.App., 169 S.W.2d 749; Patrick v. McGaha, Tex. Civ.App., 164 S.W.2d 236.

However, it does not follow that the granting of a motion that does not comply with Rule 268 and the rendition of a judgment based thereon constitutes reversible error. When questions of law only are involved, a trial court may at the conclusion of the hearing of the evidence take the case from the jury and proceed to render judgment. This may be done on the court's own motion and this power is in no way dependent upon a motion having been filed by a party litigant. Rudco Oil and Gas Co. v. Gulf Oil Corporation, Tex.Civ.App., 169 S.W.2d 791. We see no difference between the situation where the court on its own motion renders a judgment and one where the court upon an irregular or insufficient motion by one of the parties directs a verdict and renders judgment accordingly. In either instance, in determining the matter of reversible error, the question is the same, i. e., Was the prevailing party below entitled to judgment as a matter of law?

With regard to this question, the disposition of this appeal depends upon whether or not the evidence viewed in the light most favorable to appellant affords a factual basis for the cancellation of a written instrument which purports to be a compromise and settlement of all claims which Mrs. Harvey had against Dr. Elder.

Dr. Elder performed surgical operations upon Mrs. Harvey on May 12, 1940, July 28, 1942, and September 28, 1942. On March 14, 1943, appellant underwent a further surgical operation at the Robert B. Green Hospital in San Antonio, Texas.

The hospital report of this last operation contained the following statement: "A very interesting case has been solved. A heavy gauze sponge 2 feet in length was removed by gentle traction from pelvis through draining sinus. An old pack with bits of necrotic tissue adherent apparently placed in pelvis during original operation for hemostatic purposes. Patient should now have uneventful recovery. Pack was quite large enough to account for tumor mass palpable in lower left quadrant."

Mrs. Harvey secured a copy of this report, went to Nixon, Texas, where Dr. Elder resided, and showed him the report. On November 20, 1943, Mrs. Harvey executed the following release before a Notary Public of Gonzales, Texas, viz.:

"The State of Texas
"County of Gonzales

"To Whom It May Concern:

"Whereas Dr. S. D. Conally and Dr. Trevino, Physicians and Surgeons at Robert B. Green Memorial Hospital in Son Antonio, Texas, have made a statement following an operation on me on or about Mch. 14, 1943, that a piece of gauze was

found in my lower left pelvis and that this gauze had caused me lots of suffering and probably was the cause of two later operations made in 1942 by Dr. N. A. Elder. Dr. Elder denies all of this however. Said Dr. N. A. Elder to make amends for any apparent accident, if this sponge or gauze should have been left in said Hattie B. Harvey's pelvis, does hereby cancel and release one certain Deed of Trust Note and Deed of Trust in the amount of Four Hundred Seventy Five and No/100 Dollars ($475.00) dated October 1, 1942, and due on or before two years from that date, together with any and all interest due on same in addition to this does this date pay to me cash in hand in the amount of Twenty-Five Dollars ($25.00), receipt of which is hereby acknowledged. The cash payment of above Twenty Five Dollars is given as a reimbursement of any expense that I may have had or may have for any other examination or treatment.

"In consideration of the cancellation of the above mentioned Deed of Trust Note and payment to me of the Twenty Five Dollars ($25.00) cash I hereby release said Dr. N. A. Elder personally and as owner of Crest View Hospital, Nixon, Texas, together with any and all attendants of said Hospital from any and all liability either from accident or negligence in the said operation, in which it is alleged that the sponge or gauze was left in my abdomen, and I do not propose, expect or intend to take any steps to recover any further damages for the unnecessary operation or pain suffered as the result of the above mentioned condition.

"Signed and acknowledged by me this the 20th day of November, 1943.

"Mrs. Hattie B. Harvey

"Sworn to and subscribed before me this the 20th day of November, A. D. 1943.

"J. F. Wood, Jr.

"(L.S.)     Notary Public Gonzales County, Texas."

Mrs. Harvey's version of events relating to the execution of this release, as stated in her brief filed in this Court, is as follows:

"That when she went to see Dr. Elder she showed him the copy of this (Robert B. Green Hospital) chart that she looked at a moment ago; that his reaction at that time was that he acted very funny, like a wild animal—walking around the office, around several times; that when she first showed him the copy of the chart he said, 'that

gauze has been a nightmare to me'; that her brother was present at that time; that he (the doctor) did not ask her for the chart; that she did not know whether he read it or not but that she had shown it to him; that he used some cuss words, but he said, 'nobody but a damn little intern would give out such a report'; that that was after he had seen the chart; that when she left she had no understanding with him to return to his office that afternoon; that as to returning to the office, he sent for her and she went back up by herself; that she did not intend to go back to see him; that she had no engagement with the doctor to go back to his office and that he sent for her; that she did not know what the doctor wanted; that as to what happened when she got up there in his office, he said that he had prepared some papers for me to sign; that she did not know anything about those papers; that her brother did not go back there with her; that as to what Dr. Elder said regarding the papers when she went up there, 'He said that he had prepared a release to release those notes I had given him, and said that this paper was a receipt for me to sign. And he told me that he would mail the release to the Deed to me at San Antonio, and I told him to give it to my brother when he got it back, and he would mail it to me.' That as to what she thought the paper was that she had signed, that she thought it was a receipt for the notes he had given her; the land and notes; that she did not understand that this release cancelled any claim—right to file a claim or suit against Dr. Elder for leaving a gauze in her body in his operation upon her in May of 1940, and his operations upon her in July and September of 1942; that she believed that the representations made to her by Dr. Elder that it was just a receipt for the notes and the land, and that she relied on that; that she had confidence in Dr. Elder; that had she known that she was signing a paper that was releasing him from any claim that she could make against him for leaving a gauze in her body during the operation upon her of 1940, she would not have signed; that this check was not given to her for that purpose; that as to whether that writing was on that check in the corner it is now when the check was given to her, that it wasn't there then; that she didn't see it on the check; that if she had known that this $25.00 check was given to her as a consideration for the releasing of any claim of liability that she had against Dr. Elder for

leaving a gauze in her body in his operation upon her in May of 1940, she would not have taken that check; that she would not have signed this other paper; that she states to the jury that nobody else, including Mr. J. F. Wood, Jr., read this paper (referring to release) over to her before she signed it; that she states to the jury that she did not read the paper (referring to release) before she signed it; that she just looked at it; that at that time she had in her possession a copy of the chart that she had secured from the Robert B. Green Hospital; that she states to the jury that Dr. Elder wanted her to deliver this chart to him; that he asked her for it; that she did not hand it to him; that he did not give the notes to her then; that he did so later; that the $475.00 note was for the operations of July and September."

On cross-examination Mrs. Harvey testified as follows:

"Q. Now, then, you were back up in Doctor Elder's office that afternoon. Was Frank Wood (the Notary Public) up there when you came in the Doctor's office? A. No, sir.

"Q. He came up afterwards? A. Yes, sir.

"Q. Did you sign any paper in Doctor Elder's office? A. Yes, sir.

"Q. To be sworn to? A. Yes. He (Wood) asked me if I understood it.

"Q. What was that? A. He asked me if I understood it.

"Q. What did you tell him? A. I told him 'yes'."

■■ We think it elementary that the bindingness of contracts or releases can not be avoided by the simple statement of one of the parties thereto that he did not read the written instrument before it was executed and consequently did not understand its contents. Appellant here seeks to avoid the release upon allegation that her signature thereto was secured by fraud on the part of the appellee. Appellee's representation as to the contents of the release which she signed, according to her testimony, was, "that he had prepared a release to release those notes I had given him, and said that this was a receipt for me to sign." The written instrument does by its terms cancel and release said notes and was in the nature of a receipt. Fraud can not be predicated upon this statement by Dr. Elder, but must be based upon the hypothesis that he

did not go far enough and fully explain the entire contents of the instrument to Mrs. Harvey and that by failing to do so he left an inference that a release of the notes was all that the written instrument contained. However, it is not shown that Mrs. Harvey was prevented from reading the instrument by any fraudulent trick or artifice. It appears that Mrs. Harvey could read and that she was afforded an opportunity to read the instrument before she signed it. She testified that before the Notary Public affixed his signature to the instrument he inquired if Mrs. Harvey understood the terms of the release and she replied that she did.

In view of these circumstances, we hold that there was no evidence upon which a cancellation of the release could be based. The trial court properly rendered judgment for the appellee. Pioneer Building and Loan Ass'n v. Johnston, Tex.Civ.App., 117 S.W.2d 556; Parker v. Schrimsher, Tex.Civ.App., 172 S.W. 165; Murray Co. v. Putman, 61 Tex.Civ.App. 517, 130 S.W. 631; 7 Tex.Jur. 921, § 24.

The judgment appealed from is affirmed.