Theodore F. CASTILLO, Appellant,

v.

Josefa R. EURESTI, Appellee.

No. 1384.

Court of Civil Appeals of Texas, Corpus Christi.

March 29, 1979.

Rehearing Denied April 19, 1979.

Walter Groce, Corpus Christi, for appellant.

Bonner Dorsey, Corpus Christi, for appellee.

OPINION

BISSETT, Justice.

The principal issue presented by this appeal is whether the granting of defendant's motion for an instructed verdict was proper. Theodore F. Castillo, plaintiff, filed suit against Josefa R. Euresti, defendant, on November 4, 1974, whereby he sought to recover title to and possession of a certain lot in Corpus Christi, Texas. Trial was to a jury. At the close of plaintiff's evidence, defendant, in open court, orally moved for an instructed verdict, which was granted. Judgment that plaintiff take nothing was duly rendered and signed. Plaintiff has appealed.

Plaintiff alleged that on June 2, 1964, his parents, Francisco G. Castillo and wife, Josefa M. Castillo, were the owners of Lot 12, Block 16, Paul Court Addition to the City of Corpus Christi, Texas, and that on June 2, 1964, they, being desirous of making a loan on said property but could not legally do so because it was their residential homestead, conveyed the same to Valentin T. Rodriguez, who made them a loan with the understanding that the property would be

reconveyed to them upon repayment of the loan; that no money was actually paid by the grantee to the grantors but that a loan was made "against the same from Alston Terry, secured by a deed of trust lien on said property." Plaintiff then alleged that his parents were both dead, and that he, "as the sole heir-at-law of the said Francisco G. Castillo and wife, Josefa M. Castillo," is now entitled "to all right, title and interest that they had" in the property.

Defendant, in addition to a general denial and several special denials, pled several affirmative defenses to the action. Included therein, is a plea that she is a good faith purchaser of the property and that the same was purchased without notice of plaintiff's equitable interest, if any, in the property.

Plaintiff, in points 1, 2, 3 and 5, contends that the trial court erred in granting the instructed verdict against him because: 1) there was evidence that the property was conveyed to Valentin T. Rodriguez "as a mortgage," which fact was known to defendant "when she accepted a deed thereto from the said Valentin T. Rodriguez" (point 1); there was evidence of a debt "between Francisco Castillo and Valentin T. Rodriguez when the many receipts offered in evidence showed that they were payments on the house" (point 2); the court should have submitted the receipts to the jury as some evidence of the debt on the property (point 3); and the court did not require defendant to file a written motion for instructed verdict and to set out therein the specific grounds upon which she relied (point 5). None of the points can be sustained.

Defendant's motion for an instructed verdict was oral, and was made after plaintiff had rested. Several specific grounds were urged, including the grounds that there was no evidence that the Castillos, grantors in the June 2, 1964 deed, and Rodriguez, grantee in said deed, intended to treat the deed as a mortgage; that there was no evidence that defendant, the holder of the legal title to the property in question, was not an innocent purchaser for value; and

that there was no evidence to rebut the presumption that the deed from Rodriguez to defendant was an absolute conveyance of the land.

 Although the better practice is to file a written motion for an instructed verdict, a formal writing is not required where there is no evidence which warrants the submission of the case to a jury, and especially where specific grounds are stated in the oral motion. *Shapiro v. Edwards*, 331 S.W.2d 242 (Tex.Civ.App.—Houston 1959, writ ref'd n. r. e.); *Marlin Associates v. Trinity Universal Ins. Co.*, 226 S.W.2d 190 (Tex.Civ.App.—Dallas 1950, no writ). Moreover, where no fact issues are raised by the evidence, the questions to be resolved become questions of law, and the trial court may, at the conclusion of plaintiff's evidence, on its motion, take the case away from the jury and instruct a verdict for the defendant. *In Re Price's Estate*, 375 S.W.2d 900 (Tex.Sup.1964); *Harvey v. Elder*, 191 S.W.2d 686 (Tex.Civ.App.—San Antonio 1945, writ ref'd). Point 5 is overruled.

 In an instructed verdict case, an appellate court is required to view the evidence most favorably to the appellant, the losing party in the trial court, to indulge against the judgment every inference that can be properly drawn from the evidence, and to disregard all evidence adverse to the appellant. *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752 (Tex.Sup.1970); *State Highway Department v. Hinson*, 517 S.W.2d 308 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.).

We discuss all of the evidence, but in disposing of the aforesaid points, we consider only the evidence which is most favorable to plaintiff, appellant herein. Each of the hereinafter mentioned deeds was regular on its face, and purported to be an absolute conveyance, subject to liens therein contained, of the premises described therein. It is undisputed that the property in question was the residential homestead of Francisco G. Castillo and wife, Josefa M. Castillo, until June 2, 1964, when they con-

veyed the property by general warranty deed, to Valentin T. Rodriguez. Following the execution of the deed, the grantors continued to live in the house located on the premises until the date of their respective deaths. Mrs. Castillo died intestate in 1971, and Mr. Castillo died testate on August 25, 1974. This will had not been probated at the time of trial and no probate proceedings were ever had on his estate or on Mrs. Castillo's estate.

The deed from the Castillos to Rodriguez recites a consideration of $10.00 and "other good and valuable consideration including the execution and delivery by Valentin T. Rodriguez to Alston Terry of one certain Vendor's Lien Deed of Trust note in the amount of $1,650.00 payable $40.00 per month . . . bearing interest at 8% per annum . . . said note being secured by a deed of trust . . . payments on said note to be applied first to interest and balance to principal." A vendor's lien was also retained against the property conveyed by the deed to secure the payment of the note. The check for the amount of the loan, signed by Terry, was made payable to the order of Rodriguez and the Castillos. The deed of trust, which was executed by Valentin T. Rodriguez to Wm. J. Miller, Trustee for the benefit of Alston Terry, dated June 2, 1964, was released by a written release, dated October 8, 1968. The release stated that the aforesaid note had been paid in full.

On November 7, 1968, Valentin T. Rodriguez, by general warranty deed with a vendor's lien retained, conveyed the property to defendant. The deed recited a consideration of $10.00 in cash, other good and valuable consideration, and the further consideration of the execution and delivery by Josefa Euresti of one promissory note in the principal sum of $1,818.00, payable to the order of Corpus Christi Savings and Loan Association as therein provided and secured by the vendor's lien retained by the grantor in the deed and therein transferred to the Corpus Christi Savings and Loan Association, and additionally secured by a deed of trust executed by Josefa Euresti, the grantee, to Charles L. Baskin, Trustee.

Josefa Euresti, defendant, was called as an adverse witness by plaintiff. She testified that she was a daughter of Valentin T. Rodriguez and that she worked for her father, who owned and operated the Comanche Loan Company, for about 15 years, commencing in 1963. She stated that on numerous occasions Francisco G. Castillo paid money to Valentin T. Rodriguez at the office of the loan company and that she, or Angie Garcia (who worked on Saturdays), or her father, gave him a receipt when such a payment was made. Thirty-eight (38) of such receipts were introduced in evidence. Some were for "rent" and some were for "house payments." One of the receipts is dated December 3, 1968, and the others are dated in 1969, in 1970, in 1971 and in 1972; all of the receipts contain the following:

| "Previous Balance | $ _____ |
| Amount Paid | $ _____ |
| Balance Due | $ _____." |

All of the aforesaid blanks were filled in. Most of the payments were $60.00 each, but some were for $53.00 and some were for $20.00. In addition, there were several other pieces of paper introduced in evidence as receipts, but they are meaningless since it is impossible to determine what they actually represent. Defendant testified that she did not know anything about the deed from the Castillos to her father, and did not know anything about any business dealings between them. She also stated that she bought the subject property from her father and negotiated a loan with the Corpus Christi Savings and Loan Association in order to obtain the purchase money to complete the purchase. She said that she paid off the loan from rent "from the property I bought."

Concerning the transaction of June 2, 1964, whereby the land in question was conveyed to Valentin Rodriguez, Mr. Alston Terry, who made the $1,650.00 loan to Rodriguez, testified that Mr. Frank Liggett

approached him immediately prior to June 2, 1964, and told him that Rodriguez wanted to buy a house on Lipan Street, needed $1,650.00 and asked if Terry would make the loan. Shortly thereafter the Castillos and Rodriguez came to Terry's office and the matter was further discussed. Terry testified that all parties, the Castillos and Rodriguez, assured him that the proposed sale of the property in question "was a sale of the property and nothing else." He was aware of the fact that the Castillos were living in the home located on the subject lot. He advised all parties that he did not make any loans on homesteads, and further told the parties that if the property was a homestead of the Castillos, he "didn't want to have anything to do with it." He said that the check for $1,650.00 was made payable to both Rodriguez and the Castillos because the Castillos were living in the house. Terry further testified that Castillo, in person, brought the money required for the payments on the note to his office, and his secretary gave him receipts, which receipts, "were made to Valentin Rodriguez." The receipts were not introduced in evidence.

Plaintiff testified that he never had any business dealings whatever with Terry. He did, however, make one "payment" to defendant about March 28, 1973. He lived in the house from the day he was born (March 26, 1928) until sometime after the date of his father's death.

In order for plaintiff to prevail in this lawsuit, he was required to prove: 1) that the deed from the Castillos to Rodriguez was a mortgage and not an absolute conveyance; and 2) defendant was not a good faith purchaser without notice that the aforesaid deed from the Castillos was a mortgage. Plaintiff did not meet his burden.

It is conclusively established that the property here involved was the residential homestead of the Castillos on June 2, 1964, when they conveyed the premises to Rodriguez, and, therefore, not subject to a valid

mortgage. The only testimony in the record relating to the true nature of the transaction is found in Terry's testimony. He testified, in effect, that the Castillos and Rodriguez represented to him that the transaction was a bona fide sale, and assured him that it was not intended as a mortgage between Rodriguez, as mortgagee, and the Castillos, as mortgagors. While it is undisputed that Castillo actually delivered money to the Comanche Loan Company office, as testified by defendant, and to Terry's office, as testified by Terry, it is also undisputed that the note was executed by Rodriguez and all receipts were made out to Rodriguez.

The note executed by Rodriguez, payable to the order of Terry, was fully paid on October 18, 1968. All of the "receipts" introduced in evidence (those for payments made by Castillo at the office of Comanche Loan Company) were issued after that date. There is no correlation between the dates shown on such "receipts" and those shown on the Rodriguez note concerning the dates when "note payments" were made. Therefore, the notation "house payments" on some of the "receipts" means nothing since all the monies evidenced by the "receipts" were paid *after* the note had been paid. Not only is there no evidence, direct or circumstantial, that the monies evidenced by the "receipts" were paid on the Rodriguez note as payment on Castillos' debt, but there is nothing shown which will support such an inference, or that such payments created a fact issue as to whether they were payments on the asserted mortgage.

■ We hold that there was no evidence that the deed from the Castillos to Rodriguez was intended to be a mortgage or that the same constituted a mortgage. Moreover, defendant testified that she did not know any of the details incidental to the execution of the deed to her father by the Castillos; that she financed the purchase of the premises from her father by borrowing $1,818.00; that the loan for the said amount of money was paid by her; and that she

"bought" the property from Rodriguez and paid him $1,500.00. Such testimony was not disputed. There is no evidence that defendant knew, or should have known, that the deed from the Castillos to her father was, in reality, a mortgage, and no facts are presented by the record which will support such an inference. It is conclusively established that defendant was a good faith purchaser for value without notice of any claim that the Castillo deed to Rodriguez was only a mortgage. Points 1, 2, and 3 are overruled.

We have carefully considered plaintiff's remaining point of error. It is overruled.

AFFIRMED.