**Ed M. SHAPIRO et al., Appellants,**

v.

**Clara EDWARDS, Appellee.**

No. 13436.

Court of Civil Appeals of Texas.

Houston.

Nov. 19, 1959.

Rehearing Denied Jan. 7, 1960.

Second Motion Overruled Jan. 28, 1960.

Paul Maynard, W. E. Martin, Houston, for appellants.

Tom Alexander, Houston, Butler, Binion, Rice & Cook, Houston, of counsel, for appellee.

WERLEIN, Justice.

Appellee, Clara Edwards, sued appellants to recover damages for personal injuries sustained by her as a result of falling on the sidewalk in front of appellants' building. She alleged she tripped and fell over a raised edge of concrete on the premises of appellant in the entryway to a bakery operated by their lessee, G. A. Moeller. Prior to the trial, appellee, upon payment of $1,250, took a nonsuit as to Moeller and executed a covenant not to sue and an indemnity agreement. Appellants thereafter filed a third-party action against Moeller for indemnity. The Trial Court entered judgment for appellee against appellants on the jury verdict in the sum of $31,000, and further decreed that appellants take nothing against Moeller on their third-party action for indemnity. Appellants appeal only from the judgment in favor of appellee.

Appellants in their first Point assert: "The Court erred in submitting to the jury any issue of negligence as to the manner of maintenance of the sidewalk for the reason that the evidence was insufficient to establish any such negligence, or any 'defective condition thereof' sufficient upon which to predicate any liability on the part of appellants for injuries sustained as a result of appellee's fall thereon."

■ While the assignment is not quite clear, we are treating it as an assignment of no evidence of negligence rather than one going to the sufficiency of the evidence to support the jury findings. It is so treated in appellants' brief.

The evidence shows that appellants' building is on the west side of Almeda Road in the City of Houston, and that the sidewalk in question is flush with the building. The bakery operated by Moeller and known as 4208 Almeda Road occupied a part of appellants' building. In appellants' deed, their property is described as a tract fronting 47.44 feet on the west side of Almeda Road. It is not shown whether the sidewalk in question is on land upon which the City of Houston had an easement for street purposes or located on appellants' land. No special issue was requested or given with respect to such matter. Such omitted issue, therefore, will be deemed as found by the Court in such manner to support the judgment, especially in view of answers to other issues which assumed, without objection on the part of appellants, that the duty of maintaining the sidewalk was on appellants and not on the City. Rule 279, Texas Rules of Civil Procedure.

The entrance to the bakery was from the sidewalk on the West side of Almeda Road. At the entranceway there was a pair of screen doors which swung out over the sidewalk when pulled open. Each of such doors was approximately 1½ feet in width. Appellee introduced a number of pictures. Her Exhibit No. 11, also marked Appellants' "Exhibit No. 2," and other exhibits, indicate that the sidewalk was in line with the sidewalk running in front of other stores and places of business on the west side of Almeda Road and that it was used by the public generally. The exhibits indicate the screen doors were a little wider than 1½ feet. The testimony and pictures introduced show that there was an unevenness at the expansion joint in the sidewalk in front of the store at the place appellee fell, evidently caused by the settling of one section or slab of cement, or the raising of the adjoining section, thereby creating an offset at such point, which appellee testified was from ¼ to ⅓ of an inch in height. Appellee introduced pictures of such offset, showing cigarettes placed by it. It appears that the offset is in height about the diameter of a cigarette or slightly more. The place where appellee allegedly stumped her toe is marked "X" in Plaintiff's Exhibits Nos. 1, 3 and 4. Although

it is not immediately in front of the entrance to the bakery, appellants admitted that the sections of concrete or concrete blocks abutting and immediately adjacent to the Almeda Road entrance to Moeller's Bakery formed a part of the entryway to such bakery. However, we think the exhibits clearly show that the so-called entryway was merely a part of the sidewalk used by the public generally.

Appellee testified that the spot where she fell is shown by appellee's Exhibits Nos. 3 and 4. At such point a cigarette was placed in order to show the extent of the unevenness or offset in the sidewalk. She also testified that she had left school between 3:30 and 4:00 o'clock and had gone to Weingarten's, north of the bakery, and then had walked past the bakery to the Postoffice. She then proceeded in a northerly direction along the same sidewalk for the purpose of going into the bakery and buying some cookies. She further testified, "Well, the obstruction I tripped and fell over was one you might call perpendicular; I don't think people would normally see it, it was not wide open or horizontal, and I just didn't see it." She had not seen the cap on the paving before and had not tripped on it before, and had never seen anyone trip on it before her accident; that it was not raining and she presumed the sun was shining brightly; that she thought it was light enough so that she didn't have any difficulty in seeing the pavement or the sidewalk as she walked along; that the sun would be shining on the back part of the building rather than on the front part, since the building faces east. When asked why she did not see the crack, she testified, "Well, just as I got there, somebody came out of the door and it swung wide open in my face, and with dodging the door and tripping on the crack, I fell." She testified that she imagined she had been patronizing the bakery for about five years; that she sometimes went once a week, sometimes not at all, and sometimes twice a week; that she was not here in the summer, but went as often as twice a week in the winter; that usually she went in the north door; that there are two street doors, the two being the width of one door that swings into the bakery; that as she approached the bakery door, one of the screen doors swung out, and to avoid being struck by the door, she dodged and tripped over the sidewalk, or the raised portion of the sidewalk; that she was trying to dodge the screen door because it made a sudden motion forward.

In her deposition she testified:

"There was a number of people going in and out of the door, and there was shadows on the sidewalk, it was dark here, there was a shadow here and the light wasn't on."

"Q. Didn't this picture show there was a shadow? A. The sun was shining.

"Q. Was the sun down? A. On December 15th?

"Q. Yes. A. I think it was getting dark, as I remember in December; It is dark and cloudy, and this day at five o'clock in the afternoon, I would say 'yes'."

It is evident that her testimony is contradictory with respect to whether the sun was shining and also as to the time of the accident. It was stipulated during the trial, however, that the official records of the Methodist Hospital showed that appellee entered the hospital at 4:00 o'clock following the accident.

Appellee's witness, Rose Marie Hatton, testified that she was familiar with the location of the bakery; that she was 4 or 5 feet in back of Miss Edwards, and saw Miss Edwards stump her toe on the break in the concrete walk and fall; that she had been back and forth in front of the bakery many times and had never seen the crack before; that it was not an obvious crack to see; that it was a break in the block, the concrete, the concrete was higher rather

than horizontal, and you would have to be right on it and actually look for it to see it; that Mrs. Moeller came out after the accident; that she didn't recall anything Mrs. Moeller said; that she had gone to the bakery on an average of say 5 times a week, or probably 250 times during a year; that she couldn't say she didn't see the little protrusion in the sidewalk, but really never noticed it in walking back and forth.

In her deposition, taken prior to the trial, Mrs. Moeller testified that the screen door would swing out on the sidewalk maybe a foot and a half; she didn't think any more than that; that she had noticed the different levels on the cement blocks, that some were higher than others; mainly as you enter by the west side there is a little place about a foot and a half or so from the door to the left-hand side; a little raising of the concrete; that she never gave it any notice before the accident on December 15, but after the accident she noticed there was a little space there.

Mr. Moeller testified, when asked if he was familiar with the defect in the sidewalk in front of the bakery shown in the cement blocks in front of the store, "I wouldn't exactly call it a defect"; that he was familiar with the cap of the cement blocks; that it had been there a long time but he didn't know how long; that the screen doors had been there since he had been there, about 23 years; that the doors just had a spring, flying open back and forth as people used them.

Mrs. Moeller at the trial testified that she did not see appellee fall, but knew of it; that prior to such time neither appellee nor anyone else had ever pointed out the little unevenness in the sidewalk in front of the bakery; that appellee was a frequent customer of the bakery up to the time she fell; that prior to the time Miss Edwards fell, she did not know of anyone ever complaining about the condition of the sidewalk; that she did not remember saying to appellee in substance that that bad condition had been there a long time and

was dangerous, or anything like that. In her testimony, appellee had testified that when Mrs. Moeller came out she said, "Oh, that crack is a danger spot and should have been fixed."

In her deposition appellee also testified as follows:

"Q. As you walked down the street, you had no difficulty, of course, seeing that crack? A. That is right.

"Q. Was the crack any bigger or any smaller according to your best recollections than it is demonstrated there in those pictures? A. When they picked me up and I turned around and looked at it, it looked just about like it does now. It was about a fourth of an inch or a third of an inch raised."

Appellee further testified that if she had not dodged the door it would have hit her, and further, "I told you, I tripped because I caught my toe in the crack and that's exactly the way it happened; I don't believe I would have tripped if I had not been dodging the door." She was asked why she didn't see the crack, and testified, "Because I was dodging that door. I had been walking there; I didn't see it. It was a vertical crack, if it was a wide open crack, I think I would see it when the door opened. I dodged the door and I fell."

■ We think appellants' first Point should be sustained. Appellants duly requested the Court to instruct a verdict in their favor, and they also filed a motion for the Court to enter judgment non obstante veredicto.

■ The owners of the property in question were under no duty to furnish a perfect sidewalk for the use of the public generally or for those of the public who might be intending to enter the bakery or some other part of the building. Appellants could not reasonably have foreseen or anticipated that the condition in question would likely cause harm to anyone who might be using the sidewalk. No man can

be expected to guard against events which cannot reasonably be anticipated, or which are so unlikely that the risk would commonly be disregarded by persons in the exercise of ordinary care. In the instant case the condition in question consisted of one corner of a cement block being from ¼ to ⅓ of an inch higher than the adjoining block at the expansion joint. The evidence shows that such condition had existed for a long time. The condition, according to appellee, was the same at the time she fell and at the time she testified 5½ years later. Appellee testified that the sun was shining. If, however, we accept her other testimony that it was getting dark and "the light wasn't on," we are still of the opinion that appellants could not reasonably have anticipated that such condition and circumstances would result in harm. It is nowhere suggested that they, rather than their lessee, were under any duty to light up the premises.

Appellants owed the duty of exercising ordinary care to maintain the sidewalk in a reasonably safe condition for the protection of all persons impliedly invited by them to use it. They were not insurers, nor may they be held to strict liability in disregard of a consideration of foreseeability. There is no evidence that they knew of the condition complained of, nor do we think that a reasonable inspection would have disclosed a condition from which any danger or risk of harm to anyone could reasonably have been anticipated or foreseen. See 25 Am.Jur., Highways, § 373, pp. 670–1, and § 440, p. 731.

The present case is distinguishable from the case of J. Weingarten, Inc. v. Brockman, 134 Tex. 451, 135 S.W.2d 698. In that case J. Weingarten, Inc. had covered the area between its store and the sidewalk with concrete. The difference in the elevation between the two areas formed an offset which extended the entire length of the north side of the building and which was variously estimated at from 1½ to 3 inches in height. The store manager, upon seeing the plaintiff fall, remarked, "You are the fifth or sixth lady who has fallen here." The court held that such testimony constituted some evidence not only of notice to J. Weingarten, Inc. but as well of negligence in permitting such condition to exist.

In the instant case there is no evidence that anyone during the many years that the slight offset had existed had ever fallen or stumbled or stumped a toe prior to appellee's accident. The undisputed evidence is that the offset was no more than ¼ to ⅓ of an inch—approximately equivalent to the diameter of a cigarette—whereas in the Brockman case the offset, being between 1½ and 3 inches in height, was one from which it might reasonably have been foreseen some harm might result to one leaving the store with her arms full of bundles, as was Mrs. Brockman.

In City of Waco v. Stinnett, Tex.Civ. App., 177 S.W.2d 323, affirmed 142 Tex. 648, 180 S.W.2d 433, the accident happened on the south side of a concrete sidewalk about 4 feet wide. The adjoining cement blocks were not flush. One of the blocks had either raised on the south side of the walk to an elevation of 1¾ inches above the adjoining block, or the adjoining block had lowered to a depth of 1¾ inches from its adjoining block. The petitioner, while walking on the sidewalk, caught the heel of her shoe on the elevated edge of the concrete block which caused her to fall and sustain personal injuries. The accident happened on a bright sunshiny day. The petitioner had used the walk on several occasions before but had not noticed the particular defect. The court stated that the depth or height of a defect on a sidewalk cannot alone be the test of whether or not the municipality is guilty of negligence, nor can a general rule be laid down that will properly fit all cases. The court concluded upon reason and authority that under the facts of the case the question for the trial court was one of law and that the minds of reasonable men could not differ about whether the accident ought to have been anticipated by the municipality, and that under the case of City of Galves-

**248**

ton v. Dazet, Tex.Sup., 19 S.W. 142, it was necessary to hold that the facts did not raise an inference of negligence on the failure of the City to keep its walks in a reasonably safe condition. The Commission of Appeals stated [180 S.W.2d 434]:

> "Moreover to hold that negligent upkeep of a sidewalk may be reasonably inferred from the facts proved would in our opinion place an unjust burden upon a municipality and would in practice amount to holding that a municipality is an insurer of the safety of its sidewalks. The rule is otherwise in this state. Houston Belt & Terminal R. Co. v. Scheppelman, Tex.Com.App., 235 S.W. 206."

See also Marshall v. San Jacinto Building, Inc., Tex.Civ.App., 1933, 67 S.W.2d 372, writ ref.; Houston National Bank v. Adair, 1948, 146 Tex. 387, 207 S.W.2d 374; Gabriel v. Bank of Italy, 1928, 204 Cal. 244, 267 P. 544, 58 A.L.R. 1039 and annotation 58 A.L.R., p. 1042.

The photographs of the sidewalk in the present case show clearly the slight elevation of the concrete or cement slab. It is not shown how many people daily used the sidewalk in question, but the evidence does reflect that during all the time the condition had been present no one had ever fallen as a result of it.

We think the practical effect of allowing appellee's recovery to stand under the circumstances of this case would be to hold that property owners and municipalities are insurers of the safety of their sidewalks. The law imposes upon them no such strict liability.

After a careful examination of the evidence, viewed most favorably to appellee, we are of the opinion that there is no evidence which justified the submission to the jury of any issue of negligence on the part of appellants, and that the judgment of the Trial Court should be reversed. In view of our holding, we deem it unnecessary to consider appellants' other Points.

Reversed and rendered.

## On Appellee's Motion for Rehearing

In connection with her motion for rehearing, appellee has requested that we make additional findings of fact and conclusions of law, in part with respect to our refusal to grant appellee's "Motion to Strike Statement of Facts, Bills of Exception and Transcript."

Appellants' motion for new trial was overruled December 23, 1958. Their statement of facts and bills of exception were filed in the Trial Court, respectively, on April 10, 1959 and March 27, 1959, more than fifty days after their motion for new trial was overruled. No extension of time was applied for in the Trial Court or granted by that Court. Appellants, however, did file in this Court on February 10, 1959 their application for an extension of time in which to file the statement of facts and transcript, and this Court on February 26, 1959, entered an order for good cause extending the time for filing to and including April 10, 1959, on which date the transcript and statement of facts were filed in this Court. The statement of facts and bills of exception were not agreed to or approved, nor the filing of same waived by appellee or her counsel, but the statement of facts was approved and ordered filed by the trial judge on April 10, 1959 and was filed in the Trial Court on that day, and thereafter timely filed in this Court on the same day.

Rule 389-a, T.R.C.P., provides: "The approval of the trial judge of a statement of facts shall be deemed tantamount to filing the same in the trial court." It is our view that if the statement of facts, when timely presented to this Court and filed, contains the agreement of counsel or the approval of the trial judge ordering the same to be filed, appellee has no just cause for complaint, regardless of whether the agreement or order is dated or bears a date subsequent to the expiration of 50 days after the rendition of final judgment or order overruling motion for new trial. We think Rule 389-a makes the filing of the

statement of facts in the Trial Court unnecessary in such case. Had the Supreme Court desired to require the approval of the trial judge before the expiration of the fifty day period, it could have very readily so provided. We do not agree with appellee that the time limit prescribed in Rule 381 should be written into Rule 389-a. The rules are distinct and cover entirely different situations.

■ On March 27, 1959 appellants filed in the office of the District Clerk of Harris County a written designation of instruments to be included in the transcript. Appellee's counsel states on oath that appellants did not deliver or mail to appellee or her attorney a copy thereof, as required by Rule 376. Appellants' counsel counters by sworn statement that they did mail a copy thereof to appellee's attorney on the same day that it was filed in the office of the District Clerk. We, therefore, find that such request was mailed by appellants' counsel but was not received by appellee's counsel. Proof of mailing is sufficient to meet the requirement of Rule 376. Appellee's counsel was notified by the Clerk of this Court on February 26, 1959 that the time for filing the transcript and statement of facts was extended to include April 10, 1959, and on April 10, 1959 was notified by the Clerk of this Court that the same were duly filed. Appellee's counsel has not requested that any additional instruments be included in the transcript, nor has he requested leave to file a supplemental transcript, which doubtless would have been granted had he applied therefor. Appellee has shown no harm as a result of not receiving a copy of the written direction for transcript.

Our original opinion correctly states that appellants filed a motion for the Court to enter judgment non obstante veredicto. Our holding, however, is not based thereupon. The record does not indicate that notice of such motion was given as required by Rule 301. It appears that the motion was filed subsequent to entry of judgment.

■ We find that appellants' motion for instructed verdict was made in open court and in the presence of appellee's counsel, when appellee rested, and renewed when both sides rested. Said motion, which was overruled, together with appellants' exceptions, appears in the statement of facts but not in the transcript or bill of exception. Appellee did not waive the reducing of such motion to a formal writing or the filing thereof. We have concluded, however, that the failure to reduce said motion to a formal writing is immaterial since there is no evidence that warranted submission of the case to the jury. Such motion states the specific grounds therefor and particularly "that the testimony has wholly failed to show any negligence whatsoever on the part of these defendants, which caused or brought about the injuries of plaintiff." Marlin Associates v. Trinity Universal Ins. Co., Tex.Civ.App., 1950, 226 S.W.2d 190.

■ Special Issue No. 5 inquires whether appellants were negligent in permitting to exist the defective condition inquired about in preceding Issues. As appears in their bill of exception No. One, appellants properly objected to the submission of such Issue on the ground that there was no evidence raising the Issue of negligence on the part of appellants in permitting such condition to exist, and no evidence upon which a finding of negligence could be sustained. We think this sufficiently raises the objection of "No negligence" in connection with the other evidentiary Issues inquiring about the alleged defective condition of the sidewalk.

In appellants' motion for new trial, it is stated, among other things, that the Court erred in submitting the cause to the jury upon any Issue of negligence on the part of the appellants predicated upon the condition of the sidewalk in question, for the reason that there is no evidence establishing any defective condition of such sidewalk such as would amount to actionable negligence on the part of appellants, in the manner of maintenance of such sidewalk.

As indicated in our original opinion, we have construed appellants' first Point in their brief as an assignment of no evidence of negligence rather than an assignment that the evidence is insufficient to support the jury findings.

Appellee's motion for rehearing is overruled.