**Lawrence P. GWIN et al., Appellants,**

**v.**

**James P. S. GRIFFITH et al., Appellees.**

**No. 98.**

Court of Civil Appeals of Texas.

Corpus Christi.

Sept. 23, 1965.

Rehearing Denied Oct. 14, 1965.

Lawrence P. Gwin, Bay City, pro se.

Frank W. Stevens, Angleton, for appellees.

GREEN, Chief Justice.

This appeal is from a summary judgment for appellees, who were plaintiffs in a trespass to try title suit involving 1.58 acres of land in Matagorda County, Texas. We affirm.

In the trial court, the parties entered into a stipulation, pertinent portions of which are as follows:

### I.

B. E. Norvell is the common source of title having acquired the property here involved by a Deed from Joseph Korn dated December 9, 1912, recorded December 16, 1912, in Volume 38, at Page 301 of the Deed Records of Matagorda County, Texas, and attached hereto and marked "Exhibit No. 1".

### II.

Plaintiffs have succeeded to such record title as the Grantees owned by virtue of the following Deed of Trust and Deeds:

*Exhibit No. 2*—Deed of Trust from B. E. Norvell and wife, Carrie A. Norvell, to Malcolm Graham, Trustee, dated January 27, 1914, and recorded February 3, 1914, in Volume L, at Page 605 of the Deed of Trust Records of Matagorda County, Texas;

*Exhibit No. 3*—Deed from William Cash, Substitute Trustee, to P. S.

Griffith, dated September 5, 1916, and recorded September 5, 1916, in Volume 49, at Page 414 of the Deed Records of Matagorda County, Texas;

*Exhibit No. 4*—Deed from B. E. Norvell and Carrie A. Norvell to P. S. Griffith dated September 30, 1916, and recorded November 24, 1937, in Volume 123, at Page 386 of the Deed Records of Matagorda County, Texas.

### III.

Defendants have succeeded to such record title as the Grantee owned by virtue of the following Deed:

*Exhibit No. 5*—Deed from B. E. Norvell to W. M. Moseley dated February 11, 1914, and recorded March 12, 1918 in Volume 23, at page 589 of the Deed Records of Matagorda County, Texas.

Herein, where we use the term "evidence", we refer to the stipulated facts and the affidavits and one deposition which were before the trial court at the time the motion for summary judgment was presented and ruled on.

■ In determining this cause, we shall of course be guided by the pronouncement of the Supreme Court in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, page 931, that the court " * * * accepts as true all evidence of the party opposing the motion which tends to support such party's contention, and gives him the benefit of every reasonable inference which properly can be drawn in favor of his position."

As shown by the affidavit of E. N. Gustafson, then county surveyor of Matagorda County, in 1913 B. E. Norvell requested him to subdivide the eastern portion of the 213.-54 acre tract of land conveyed by deed from Korn to Norvell referred to in paragraph I of the stipulation of facts, which contained the 1.58 acres in litigation, and he did sub-

divide said eastern portion into five tracts of ten acres each, and one of 15.02 acres. The statement of Gustafson relied on by appellant to establish an equitable title in Moseley as early as 1913, which appellant claimed ripened into legal title by the subsequent deed from Norvell to Moseley, is:

"As I recall the matter at this time Mr. Norvell, either shortly before or shortly after these lands were surveyed, told me that he had sold them to the individuals whose names I placed on the plat of said survey prepared by me and marked Exhibit A. The subdivided tracts referred to are: J. T. Lowe—10 acres; J. M. Lowe—10 acres; W. B. Lowe—10 acres; A. C. Edison—10 acres; J. Preddy—10 acres; William Moseley—15.02 acres.

"I am sure that the names of the above owners were furnished to me by Mr. Norvell at some time as early as November, 1913, because I typed in the name of each individual owner on the field notes * * * Copies of these field notes and the plat have remained on file with the records of the County Surveyor of Matagorda County, Texas, since their preparation by me in 1913. * * * "

The deed from Norvell to Moseley, dated February 11, 1914, mentioned in paragraph III of the stipulation, which was executed 15 days after the deed of trust referred to in paragraph II of the stipulation, and 8 days after such deed of trust was recorded, purpurted to convey this 15.02 acre tract to William Moseley. This deed was not placed on record until March 12, 1918.

Appellees claim superior title by foreclosure of a deed of trust from Norvell and wife, both prior in time and prior of record to the conveyance from Norvell, the common source, to Moseley, under whom appellants claim. Appellees also claim title by a subsequent deed from the common source, title by prior possession, and by limitation under the five and ten years statutes.

Appellants present this appeal on four points, as follows:

## FIRST POINT

The Affidavits and Depositions on file raise genuine issues as to material facts and the Trial Court erred in holding that the Appellees were entitled to a judgment as a matter of law.

## SECOND POINT

The Affidavits filed by Appellants reflect admissible evidence sufficient to sustain a finding that the common source had transferred the title to the strip in issue to Moseley prior to the acquisition of any title by Appellees to the land in dispute.

## THIRD POINT

The recitals in the Deed of Trust and Deed under which Appellees claim to the effect that Appellants' predecessor in title, Moseley, owned the land, charged Appellees with notice as to the extent of his claim, and the force of the rule is not altered by either mistakes or misrepresentations on the part of Appellees' Grantor in:

(1) The number of acres in Moseley's tract or

(2) An incorrect course and distance to the stake set for Moseley's southwest corner.

## FOURTH POINT

The Affidavits filed by Appellees are insufficient to establish the possession and use of the land in question under the circumstances and for the requisite period required to mature title by adverse possession.

The deed of trust referred to as Exhibit 2 in paragraph II of the stipulation, executed by the common source January 27, 1914, recorded February 3, 1914, was to secure payment of a $4,500.00 note given by Norvell to Security Trust Company. It contains a detailed field note description recited to have been prepared by Gustafson of the property conveyed to the trustee, the security being 150 acres (actually 149.8) of the 213.54 acre tract acquired from Korn in 1912, and did not include the five ten-acre tracts of J. T. Lowe, J. M. Lowe, W. P. Lowe, A. C. Edison and J. Preddy, or 13.54 acres of the tract surveyed by Gustafson for Moseley. The east line of the 150 acre tract described in the deed of trust commenced at the:

"Northwest corner of a 10 acre tract belonging to J. T. Lowe; Thence S 17 W along the west end of five 10 acre tracts belonging to J. T. Lowe, J. M. Lowe, W. B. Lowe, A. C. Edison, and J. Preddy, respectively, 2083.5 feet to a stake for corner, said stake being the southwest corner of the 10 acre tract belonging to J. Preddy, and being the extreme West corner of a 13.54 acre tract belonging to Wm. Moseley; Thence S. 40 20' E along the southwest edge of the Wm. Moseley tract 300.4 ft. to a stake in a fence for corner, said stake being the extreme south-west corner of the Moseley tract;".

The description then proceeds in a southwesterly direction, and eventually joins the point of beginning.

We have prepared and made a part of this opinion a plat, not exact as to scale, of the eastern portion of the Norvell 150 acre tract as described in the deed of trust, showing also the 5 ten acre tracts and Moseley's tract, with a broken line to designate the western boundary of said Moseley tract as shown by the Gustafson plat. The triangular 1.58 acre tract thus formed is the land in litigation.

All calls for course and distance on this plat are identical with such calls on Gustafson's plat except the call concerning the west or southwest edge of the Moseley tract. The deed of trust next call from the southwest corner of the J. Preddy tract reads:

"S 40° 20′ along the south-west edge of the Wm. Moseley tract 300.4 feet to a

stake in a fence for corner, said stake being the extreme south-west corner of the Moseley tract; thence with the meanders of said fence as follows: S 53½ W. 456.3 ft. * * *."

The Gustafson plat called for the western boundary line of the Moseley tract to be a continuation of the west boundaries of the five ten acre tracts, and to extend from the S W corner of the J. Preddy tract S 17° W 510 feet for its S W corner, as shown by the dotted line on our plat.

The property described in the deed of trust, including the land in litigation, was sold at trustee foreclosure sale to P. S. Griffith September 5, 1916, (see stipulation) and the trustee deed containing the same description of the land as did the deed of trust, was filed for record September 6, 1916, one and a half years before the deed purporting to convey the 15.02 acre tract from the common source to Moseley was filed for record.

Appellees in their counter points contend (1) that no genuine issue of any material fact was raised as to the superior title of appellees from the common source; (2) title by the prior possession of appellees, and limitation title; (3) that the record revealing no evidence of a prior transfer to Moseley, appellant's predecessor in title, of the land in dispute, appellees, as owners of the prior legal title without notice of any claim of Moseley to any land except the 13.54 acres mentioned in the deed of trust, correctly recovered judgment; (4) that the recitals in the deed of trust and trustee's deed to the adjoining 13.54 acre tract owned by William Moseley and describing a boundary line of the Moseley tract did not place any burden on appellees' predecessor in title to look outside their chain of title to investigate a possible claim by Moseley to property included within the deed of trust, or trustee's deed.

Appellees, and those under whom they hold, claim title to the land in controversy under deeds duly registered since the recording of the deed of trust on February 3, 1914. The evidence discloses without dispute that an old fence, strong enough to turn cattle, enclosed the 149.8 acres described in the deed of trust and in the trustee's deed prior to 1952 when lessees holding under appellees went into possession of the tract, and pastured cattle and farmed rice therein, and that such fence was still standing in 1963.

Appellants contend that the recitals of ownership of the tract by Moseley in the deed of trust and trustee's deed, and the calls for the Moseley corner were sufficient to put the Security Trust Company on notice of an unrecorded claim of title, and that such inquiry would have resulted in knowledge that Moseley possessed equitable title to the 15.02 acres, including the triangular shaped 1.58 acres in controversy at the time of and prior to the deed of trust. We do not agree with this contention. There was nothing of record to give legal notice of the claimed equitable title of Moseley to a 15.02 acre tract, and there was no evidence to show that the trust company had notice, actual or constructive, that Moseley owned any of this property, other than the reference in the deed of trust to Moseley's 13.54 acre tract, and the description of its western boundary as contained in the deed of trust. According to this description, Moseley's tract did not include the land in litigation.

To show that the description in the deed of trust was no mistake, and was intended as stated, the deed of trust called for a 150 acre tract to serve as security for the loan. Excluding the five ten acre tracts and the 13.54 acre Moseley tract from the original 213.54 acres owned by Norvell, there remained the 150 (149.8) acres included by the description. To adopt appellants' reasoning that the call for the southwest edge of the William Moseley 13.54 acre tract in the deed of trust should be construed as a call for the west line of the Moseley 15.02 acre tract as it appeared on Gustafson's unrecorded plat would require the following changes in the field notes contained in the deed of trust and trustee's

deed: (1) the call would have been for the Moseley 15.02 tract; (2) the call "thence S 40 20' E along the southwest edge of the Wm. Moseley tract 300.4 feet to a stake in a fence for corner," would have been "thence south 17° W along the west or northwest edge of the Moseley tract 510 feet to a stake in a fence for corner"; (3) the call for the first meandered section of the fence along the south line of the deed of trust tract would have been omitted; (4) the acreage included in the property serving as security for the loan would have been reduced to 148.22 acres, instead of 150 acres (actually 149.8).

■■ The affidavit of Gustafson, together with his unrecorded field note descriptions and plat, is entirely irrelevant to the record title held by appellees unless it is shown by appellants that Security Trust Company had notice of Moseley's claims at the time of the execution of the deed of trust. Hill v. Moore, Tex.Sup.Ct., 62 Tex. 610; Connor v. Lane, Tex.Civ.App., 355 S.W.2d 223. There was no effort made by appellants to offer any evidence that the trust company had such knowledge. The facts do show, however, that Moseley received his deed with legal notice of the existing deed of trust lien on a portion of the property purportedly conveyed to him. The rule is well established that one who purchases land in good faith at a deed of trust foreclosure succeeds to all of the rights of the mortgagee. Hall v. Wilson, Tex.Civ.App., 215 S.W.2d 204, writ ref., n. r. e.; 39 Tex.Jur.2d, Mortgages and Trust Deeds, § 165, pp. 227–228.

■ In Connor v. Lane, supra, the Court of Civil Appeals, in reversing the case and rendering judgment for the holder of the legal title, stated:

> "Where the holder of an equitable title relies on it in this type of case to prevail over the subsequent purchaser of the legal title, the burden rests on the former to establish the holder of the legal title had notice, and was not an innocent purchaser."

See that opinion for other cases supporting this statement.

■ There was no evidence that Moseley had taken possession of the land claimed by him at the time of the execution and placing of record of the deed of trust. The mortgagee was justified in accepting the description of the land as described in the deed of trust, and was not put on inquiry concerning any unrecorded equitable title of Moseley's, or any unrecorded plat or survey. Bounds v. Little, 75 Tex. 316, 12 S.W. 1109; Strong v. Strong, 128 Tex. 470, 98 S.W.2d 346, 109 A.L.R. 739.

■ Appellants wholly failed to prove any legal title to any of the 15.02 acre tract except the title acquired by the deed from Norvell to Moseley given subsequent to the deed of trust, and recorded subsequent to the trustee's deed. The description of the property included in the deed of trust and trustee's deed conflicted with the description of the land purported to be conveyed in the deed to Moseley, in that all three instruments included the small tract in litigation. No issue is raised concerning Moseley's title to the 13.54 acre tract. The appellants failed to offer any evidence to carry out their burden of showing that the mortgagee had any knowledge or notice of an equitable title in Moseley prior to the execution and placing on record of the deed of trust. The record establishes title to the tract in issue in appellees as a matter of law, under the stipulation that they had succeeded to such record title as the grantees owned by virtue of the deed of trust and trustee's deed in evidence. Gulf, Colorado & Santa Fe Railway Co. v. McBride, Tex.Sup.Ct., 322 S.W.2d 492; Connor v. Lane, supra; Strong v. Strong, supra; Hall v. Wilson, supra.

■ In February, 1963, appellant forcibly entered upon the property in litigation, tore down the boundary fence between it and the 13.54 acre tract not in litigation, and erected a new fence along the line contended for by him. At that time, appellees were in possession of the land, and had

through tenants been in possession for a number of years. The record does not disclose evidence of any prior possession of the tract by appellants though it is shown that, because Gustafson's plat was a part of the county tax assessor's records, appellants had been paying taxes on 15.02 acres. Since appellants have failed to establish any title in them to the 1.58 acres in litigation, appellees were also entitled to judgment by reason of the doctrine of prior possession.

In Reiter v. Coastal States Gas Producing Co., Tex.Sup.Ct., 382 S.W.2d 243, the Court, in reversing the judgments of the lower courts, and rendering judgment for appellants by reason of prior possession, said: (p. 251)

> "The doctrine of 'prior possession' should be a simple one as it is designed to maintain public peace and order. In essence it proceeds upon the theory that one in possession should not be disturbed unless it be by one having a better title. In Bradshaw v. Ashley [180 U.S. 59, 21 S.Ct. 297, 45 L.Ed. 423] which undoubtedly represents the prevailing American rule, the United States Supreme Court categorically stated:
>
> " '[T]he presumption of title arises from the possession, and, unless the defendant prove a better title, he must himself be ousted. * * * ' "

 The appellees having established their superior legal title to the property in litigation as a matter of law, and that no material fact issue existed as to their cause of action, and appellants having failed to show that any material fact issue existed upon any affirmative defenses, the court properly rendered summary judgment for appellees. Gulf, Colorado & Santa Fe Railway Co. v. McBride, Tex.Sup.Ct., supra; McDonald, Texas Civil Practice, Volume 4, Sec. 17.26.1.

Appellants' first three points of error are overruled.

We find that fact issues are present concerning appellees' claim of title by limitation under the five and ten years statute of limitations. The evidence presented by the affidavits only cover the period from 1952 to 1962, and there appears doubt as to whether they include any consecutive period of ten years. Appellants' evidence, except for the affidavit of Gustafson, for the most part is applicable to the claimed title by limitations, and raises definite controverted fact issues concerning payment of taxes and use by appellees of the property for the period necessary to mature limitation title.

We sustain appellants' fourth point. This does not affect the disposition of the appeal.

Judgment affirmed.