Dan DILLARD, Jr., et ux., Appellants,

v.

William H. BROYLES, et al., Appellees.

No. 1862.

Court of Appeals of Texas, Corpus Christi.

April 22, 1982.

Rehearing Denied May 13, 1982.

638

Brinkley L. Oxford, Oxford & Oxford, Edinburg, for appellants.

Randall G. Hanshaw, John F. Rowin, Edinburg, Mark Freeland, Freeland & Freeland, McAllen, for appellees.

Before NYE, C. J. and UTTER and KENNEDY, JJ.

## OPINION

NYE, Chief Justice.

Dan Dillard, Jr., and wife, Sandra L. Dillard (appellants), brought this suit to set aside a trustee's deed, for damages for wrongful foreclosure and damages for fraud against William H. Broyles, John R. Freeland and Reymundo Sanchez. From a judgment granting instructed verdicts in the favor of all three defendants on all causes of action, the Dillards perfected this appeal.

On or about December 23, 1974, the Dillards purchased from Sanchez a house and lot located in the city of Pharr, Hidalgo County, Texas, which property is the subject of the instant suit. As partial consideration for the sale, the Dillards executed in favor of Sanchez a promissory note in the principal sum of $3,600.00, which note was secured by a vendor's lien and deed of trust. The Honorable John R. Freeland was the attorney representing both the buyer and the seller in the transaction. He was named trustee in the deed of trust.

Under the note, the Dillards were obligated ·to make monthly payments in the amount of $49.72, for a total of 108 payments, beginning February 1, 1975, to Sanchez. It is disputed whether the Dillards made any payments on the note. In any

event, all parties agree that the Dillards made fewer than six payments total, allegedly refusing to make further payments because of Sanchez' failure to make certain repairs on the house.

In a letter dated June 1, 1977, and admittedly received by the Dillards shortly thereafter, Freeland informed the Dillards that their note had been accelerated because of their nonpayment and that foreclosure would be forthcoming if they did not tender the full amount of the principal and interest then owing within 10 days. Shortly after receiving the letter, the Dillards explained to Freeland by telephone their reason for nonpayment, i.e., the alleged warranty breaches of Sanchez. Freeland replied that he would see what he could do about getting Sanchez to fix the house, but that "the note would have to be paid." Although there was testimony as to repeated attempts to contact Sanchez with regards to fixing the house, the Dillards had no further contact with Freeland.

On or about May 1, 1979, after the written notice of the foreclosure was sent to the Dillards and was returned "unclaimed," Freeland, exercising the power given him by the deed of trust, sold the subject property to Broyles.

The Dillards here attack the adverse instructed verdicts by alleging several irregularities and inequities in the foreclosure, actionable fraud and professional misconduct on the part of defendants Sanchez and Freeland, and knowledge on the part of defendant Broyles so as to preclude Broyles from being an innocent purchaser for value of the property at the trustee's sale.

■ In reviewing the propriety of granting an instructed verdict generally, we must consider all of the evidence in the light most favorable to the party against whom the verdict was instructed, disregarding all contrary evidence and inferences. *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752 (Tex.1970); *Elizondo v. Tavarez*, 596 S.W.2d 667 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n. r. e.). When reasonable minds may differ as to the truth of controlling facts, an issue of facts is

presented for the trier of fact. *Najera v. Great Atlantic & Pacific Tea Co.*, 146 Tex. 367, 207 S.W.2d 365 (1948); *Elizondo v. Tavarez*, supra. With these rules in mind, we will examine each of the controlling points of error presented.

■ The Dillards first submit that there was sufficient evidence to raise a jury issue on whether Sanchez failed to make adequate demand of the Dillards for payment of the amount overdue and give adequate notice of intent to accelerate the entire indebtedness. Where, as here, the acceleration clause of the note is not automatic, but depends upon the exercise of an option of the mortgagee to declare the whole balance due, notice of the intent to mature the entire debt must be given prior to the actual exercise of the option to accelerate. In other words, some opportunity to cure the default caused by failure to pay installments when due must be afforded the debtor before the option to accelerate may be exercised under the note. *Brown v. Hewitt*, 143 S.W.2d 223 (Tex.Civ.App.—Galveston 1940, writ ref'd); *Jernigan v. O'Brien*, 303 S.W.2d 515 (Tex.Civ.App.—Austin 1957, no writ); *Crow v. Heath*, 516 S.W.2d 225 (Tex. Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.).

■ In the instant case, Dillard testified that, shortly after the closing of their purchase of the subject property from Sanchez, they received a letter from Freeland containing their copy of the recorded deed, note and deed of trust. This was in the early part of 1975. Dillard testified that the next time he heard from attorney Freeland was around the first of June, 1977, when they received the letter notifying them that the note *had been* accelerated and that a sale of the property under the terms of the deed of trust would be had if payment *in full* was not tendered within ten days. Sanchez, the seller, testified that he made no attempt to contact the Dillards (purchasers) about the debt; that he left the matter to his attorney [Freeland].

Under the standard of review announced above, we hold that this testimony alone is

sufficient to entitle the Dillards to reach the jury on the question of whether the initial step in the foreclosure process, demand for late payment and notice of intent to accelerate, was in fact taken. The Dillards' first point of error is sustained.

The Dillards next contend, in essence, that the undisputed evidence of a delay of approximately 22 months between the June 1, 1977, letter notice of acceleration and the March, 1979, mailing of written notice of the foreclosure sale was sufficient to raise issues on laches, stale demands and equitable estoppel. However, in the absence of affirmative pleadings, the Dillards cannot assert these "defenses" to the foreclosure proceedings; they are waived. Rule 94, T.R.C.P. See: *Bowling v. City of Port Arthur*, 522 S.W.2d 270, 273 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.) (estoppel); *Danaho Refining Co. v. Dietz*, 398 S.W.2d 307 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.) (laches). Point of error number four is overruled.

■ The Dillards argue: that because of the time period between the notice of acceleration and the actual foreclosure; that because attorney Freeland represented both the seller and the buyer at the closing of the Dillards' purchase of the subject property from Mr. Sanchez; that because attorney Freeland was aware that the Dillards were unhappy with some aspects of the construction of their home; and that because attorney Freeland had personal knowledge of their actual address; Freeland should be held to some higher standard beyond compliance with Article 3810. We decline to so hold. In the first place, the duty prescribed by Article 3810 [1] belongs to "the holder of the debt," which in this instance is the seller, Sanchez. In the second place, we know of no reason, rule or law which would require a debt holder, in similar circumstances, to do more than comply with the statute. The deed of trust involved herein required notice in accordance with article 3810. The Dillards do not specifically complain that attorney Freeland and seller Sanchez failed to comply with the trust deed notice provision.

■ The Dillards submit, in the alternative, that Article 3810 is unconstitutional, conflicting with the due process and equal protection clauses of the Constitutions of the United States and the State of Texas. This Court has previously upheld the constitutionality of Article 3810 in *Armenta v. Nussbaum*, 519 S.W.2d 673 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.). See that opinion for reasoning and authorities cited therein. It is uncontroverted that Freeland or Sanchez mailed to the Dillards written notice of the proposed foreclosure sale by certified mail in compliance with Article 3810. The Dillards admitted so in their petition. Service is complete upon deposit in the mail, and the fact that the letter was returned unclaimed did not place a further duty upon Sanchez or Freeland. *Hausmann v. Texas Savings & Loan Association*, 585 S.W.2d 796 (Tex.Civ.App.—El Paso 1979, writ ref'd n. r. e.); *Martinez v. Beasley*, 616 S.W.2d 689 (Tex.Civ.App.—Corpus Christi 1981, no writ). No jury issue was raised in regards to proper notification of the foreclosure sale. The instructed verdict in this part of the lawsuit was proper. Points of error numbers 5 and 7 are overruled.

■ The Dillards next assert there was sufficient evidence on which reasonable minds could differ on whether "defendant Sanchez requested defendant Freeland to

---

1. The duty to notify a debtor of a sale of real estate to be made under powers conveyed by a deed of trust is described by Tex.Rev.Civ.Stat. Ann. art. 3810 (Vernon Supp.1982), which provides, in pertinent part:

"In addition, the holder of the debt to which the power is related shall at least ten days preceding the date of sale serve written notice of the proposed sale by certified mail on each debtor obligated to pay such debt according to the records of such holder. Service of such notice shall be completed upon deposit of the notice, enclosed in a postpaid wrapper, properly addressed to such debtor at the most recent address as shown by the records of the holder of the debt, in a post office or official depository under the care and custody of the United States Postal Service."

foreclose on the property in question," as required by the trust deed. This contention is without merit. The deed of trust itself contained a presumption of request. The Dillards' burden was to rebut that presumption with evidence to show there was in fact no authorization. This they failed to do. Point of error number nine is overruled.

The Dillards also maintain that the trial court erred in granting an instructed verdict because there was sufficient evidence on which reasonable minds could differ on whether Sanchez received more money than allowed by law. The trustee's deed, defendant's exhibit 2, indicates the purchase price of the subject property at the foreclosure sale was $6,299.46. However, there is no evidence in the record to indicate that this sum is greater than required to cover the debt and other authorized charges such as attorney's fees, trustee's fee, interest on past-due principal and interest or delinquent taxes. Further, there is no evidence to indicate the amount actually retained by Sanchez or whether any surplus was returned to the Dillards. In short, the record does not support the Dillards' assertion that there was sufficient evidence on which reasonable minds could differ that "defendant Sanchez received more money than allowed by law, . . . ." Therefore, point of error number ten is overruled.

The Dillards bring points of error in connection with their allegation of fraud against attorney Freeland. In the first of these, the Dillards contend they proved a prima facie case of fraud against Freeland by showing that Freeland was representing conflicting interests contrary to State Bar of Texas, Rules and Code of Professional Responsibility EC 5–15 (1973). In order to make a prima facie showing of fraud, it is necessary that there is some evidence on each of the following elements: 1) A false statement of material facts (or silence in the face of a duty to reveal material facts); 2) Intent to induce action or inaction by the plaintiff; 3) Actual reliance thereon by the plaintiff; and, 4) Damages. *Long v. Smith,* 466 S.W.2d 32, 36 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.).

The evidence is undisputed that Freeland represented both the Dillards and defendant Sanchez as buyer and seller respectively in the original real estate transaction. State Bar of Texas, Rules and Code of Professional Responsibility, EC 5–15 (1973) reads as follows:

"If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests. If a lawyer accepted such employment and the interests did become actually differing, he would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that he refuse the employment initially. *On the other hand, there are many instances in which a lawyer may properly serve multiple clients having potentially differing interests in matters not involving litigation.* If the interests vary only slightly, it is generally likely that the lawyer will not be subjected to an adverse influence and that he can retain his independent judgment on behalf of each client; and if the interests become differing, withdrawal is less likely to have a disruptive effect upon the causes of his clients." (Emphasis supplied)

With the agreement of the parties after a full disclosure of the facts, an attorney may properly represent both the buyer and seller in a real estate transaction.[2] Many times it is much less expensive to all parties concerned. The Dillards were satisfied with Freeland's handling of the original transaction. Dillard admitted that

2. The State Bar of Texas, Commission on Interpretation of the Code of Professional Responsibility, Opinion No. 228 (1959).

he was aware of Freeland's position as trustee, and understood that, as trustee, Freeland had the power to sell the subject property in case of default. We hold that Freeland's representation of both buyer and seller in the original transaction was neither improper nor unethical.

The Dillards argue, then, that they had a continuing attorney-client relationship with defendant Freeland with regard to the subject property at all times material to this dispute.

 Unless there is some special agreement, once the purpose of the employment is completed, the attorney-client relationship terminates. See *Jinks v. Moppin*, 80 S.W. 390, 393 (Tex.Civ.App.—1904, no writ) and *Hamilton v. Hamilton*, 225 S.W. 69 (Tex.Civ.App.—Austin 1920, writ dism'd). The evidence reflects that Freeland was paid by the Dillards a total of $135.00 for his services in preparing the necessary documents and coordinating the closing of their purchase of the subject property from Sanchez. The Dillards had no further contact with Freeland until they received the demand letter of June 1, 1977. There is nothing in the record to indicate that the Dillards ever attempted to retain Freeland for any purpose after the closing of the original sale. In short, there is no evidence to support the existence of an attorney-client relationship beyond the closing date of the original real estate transaction of December, 1974.

The Dillards maintain that because they continued to rely upon Freeland for advice or because they "assumed" that Freeland continued to represent them regarding this property, Freeland's later actions as trustee were fraudulent. However, the Dillards failed to produce any evidence that Freeland misrepresented any facts with regard to their relationship or the property in question. In fact, the June 1, 1977 "demand and acceleration" letter clearly stated that Freeland was representing Sanchez in the collection matter. The Dillards point out that shortly after receiving the June 1, 1977 letter, they contacted Freeland by telephone and he agreed to talk to Sanchez about the Dillards' complaints regarding the house. We do not think this agreement amounted to a representation by Freeland that he would represent the Dillards in the matter.

 The Dillards apparently feel that Freeland was under a duty to affirmatively deny that he was their attorney. However, there is no evidence that Freeland was aware that the Dillards assumed that he was their attorney in the matter. In absence of such knowledge, we decline to impose such a duty. See *Smith v. National Resort Communities, Inc.*, 585 S.W.2d 655 (Tex.1979). The record is devoid of evidence to support any of the elements necessary for a cause of action for fraud against attorney Freeland. The Dillards were not entitled to go to the jury on their claim of fraud. See *Ottis v. Haas*, 569 S.W.2d 508 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.).

 The Dillards also complain that the trial court erred in failing to allow the jury to consider the testimony of three licensed attorneys on the issue of representation of conflicting interests. Each of the witnesses, after qualification, was given a detailed hypothetical situation paralleling the facts of this case. They were then asked if, in their opinion, it would be a violation of the Canon of Ethics' prohibition against representation of conflicting interests for an attorney who had represented both the buyer and the seller in closing a real estate transaction to later represent the seller in his attempt to collect his unpaid note and to fulfill his duty as trustee under the deed of trust in foreclosing upon the buyers. The trial court refused to allow the jury to consider such testimony. This ruling was a matter of law for the court to decide.

To be admissible, evidence must be relevant and material, tending to prove or disprove some issue in the case. *Dallas Railway and Terminal Co. v. Oehler*, 156 Tex. 488, 296 S.W.2d 757 (1957). Further, the admissibility of expert testimony is a matter of discretion for the trial court, whose decision should not be disturbed without a

showing of abuse of that discretion. *Bryant v. Trinity Universal Insurance Co.,* 411 S.W.2d 945 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.) and cases cited therein.

The Dillards attack the instructed verdict as to purchaser Broyles on the grounds that there was a fact issue raised on whether he was an innocent purchaser for value at the trustee's sale. As a claimant of equitable title seeking to avoid the trustee's deed, the Dillards had the burden of showing that Broyles, the subsequent purchaser of legal title, was not an innocent purchaser. See *Gwin v. Griffith,* 394 S.W.2d 191 (Tex.Civ.App.—Corpus Christi 1965, no writ); cf. *Phillips v. Latham,* 523 S.W.2d 19 (Tex.Civ.App.—Dallas 1975, writ ref'd n. r. e.).

The Dillards maintain they met their burden sufficiently to get to the jury by introducing testimony to the effect that Broyles had notice of their possession of the property in question at the time of the foreclosure sale, citing *Baird v. Laycock,* 94 S.W.2d 1185 (Tex.Civ.App.—Texarkana 1936, writ dism'd). This case is not in point. The only evidence on this issue is the testimony that Broyles knew the Dillards were occupying the house. We do not think this equals "actual notice of a title of those in possession." The deed of trust from the Dillards to Freeland, Trustee, specifically recites that after a sale under the power granted in the deed, the Dillards would be "mere tenants at sufferance of the purchaser of said property . . . at such trustee's sale, and that such purchaser shall be entitled to the immediate possession thereof, . . ." There is nothing in the fact of the Dillards remaining in possession after default that would give Broyles notice of a claim of title.

Likewise, mere knowledge that the debtor has remained in possession is not sufficient to raise a duty to inquire into the validity of the trust deed. The fact of continuing possession is not enough to arouse the suspicion of a reasonably prudent person as to an equitable claim of the mortgagor against the mortgagee or trustee. Broyles was not under a duty to inquire as to the possibility of such claims. This Point of error is overruled.

The Dillards next assert that the trial court erred in giving an instructed verdict because "There was sufficient evidence on which reasonable minds could differ, that defendant Reymundo Sanchez gave a 'running warranty' on his product." A review of the pleadings and the statement of facts indicates that the Dillards apparently sought to assert a claim for breach of warranty as a defense to the foreclosure. In response, Sanchez pleaded that any claim for breach of warranty constitutes an independent cause of action, and as such, is subject to a plea of limitations even when the claim is asserted in a defensive manner. *Hobbs Trailers v. J. T. Arnett Grain Co., Inc.,* 560 S.W.2d 85 (Tex.1977).

In our case, the Dillards purchased their home from Sanchez in December, 1974. It is undisputed that Sanchez gave the Dillards an oral one-year warranty of workmanship. The Dillards admit the defects of which they complain occurred within the first year after purchase of the home. The Dillards filed this suit to set aside the foreclosure on May 18, 1979. The statute of limitations then applicable to oral warranties was two years. Tex.Rev.Civ.Stat.Ann. art. 5526 (Vernon 1958). This suit was filed more than three years after the latest date on which a cause of action for breach of warranty could have arisen. It is clear that such claim is barred by limitations.

In their brief, the Dillards apparently argue that Sanchez should be estopped from asserting limitations because he testified at the trial to the effect that sometimes he extended his warranty beyond one year for small repairs. This argument must fail. Estoppel as a defense to a claim of limitations must be affirmatively pled. Rule 94, T.R.C.P. The Dillards failed to plead estoppel, and therefore may not rely upon the defense.

Perhaps the Dillards' argument is that the jury should have been allowed to determine whether the warranty given was

unlimited in time and therefore the limitations claim was inapplicable. There simply is no evidence in the record to support this claim. In fact, the record affirmatively shows the contrary. Sanchez testified that his oral warranty was good for one year. The Dillards testified that their understanding was that the warranty was for one year. They also testified that the defects complained of arose within the one year period. Sanchez' admission that he sometimes extended the one-year warranties for minor repairs did not create a jury issue on the matter. There is nothing in the record to indicate that Sanchez had agreed to extend his warranty in this case.

■ Finally, the Dillards argue that the trial court erred in granting instructed verdicts because the defendants failed to file proper motions therefor. The record discloses that the trial court rendered instructed verdicts on oral motions. As the Dillards admit, Rule 268, T.R.C.P., does not require a formal written motion for instructed verdict. The requirement of specificity may be met with an oral motion. *Castillo v. Euresti*, 579 S.W.2d 581, 582 (Tex.Civ.App.—Corpus Christi 1979, no writ); *Shapiro v. Edwards*, 331 S.W.2d 242 (Tex.Civ.App.—Houston 1959, writ ref'd n. r. e.). 3 R. McDonald, Texas Civil Practice § 11.27.1 (1970). Point of error number twelve is overruled.

The judgment of the trial court is reversed, and a new trial is ordered on appellant Dillards' cause of action for damages for wrongful foreclosure, if any, caused by the inadequate notice, if found to exist, on the demand for late payment and intent to accelerate. In all other matters, the judgment of the trial court is affirmed. The costs shall be adjudged ⅔ against the appellant Dillards and ⅓ to the appellee Sanchez. No costs shall be adjudged against either attorney Freeland or purchaser Broyles.

REVERSED and REMANDED in part and AFFIRMED in part.

1. The applicable limitations provision is found at Tex.Rev.Civ.Stat.Ann. art. 5520 (Vernon 1958).

## OPINION ON MOTION FOR REHEARING

By their fourth point of error in this appeal, the Dillards sought to raise the equitable doctrines of laches, stale demands and equitable estoppel. We overruled the point for failure to assert these matters by affirmative pleadings, as required by Rule 94, T.R.C.P. By their motion for rehearing, the Dillards have brought to our attention pleadings which we now feel were sufficient to raise the issues of laches and stale demands.

■ However, we hold that these equitable defenses are totally inapplicable to the instant case. Laches and stale demand are peculiarly available against the assertion of equitable rights, and may not be invoked to resist the enforcement of a purely legal right. *Reynolds v. Farmers and Merchants National Bank of Nocoma*, 135 S.W.2d 556 (Tex.Civ.App.—Fort Worth 1940, no writ); *Railroad Commission of Texas v. Jackson*, 315 S.W.2d 193 (Tex.Civ.App.—Austin 1958, writ ref'd n. r. e.); See 35 Tex.Jur.2d *Laches and Stale Demands* § 3 at 462 (1962).

If an alleged cause of action (as we have before us) comes within a specific provision of the statute of limitations, then the equitable defenses of laches and stale demand generally do not apply. *Transportation League, Inc. v. Morgan Express, Inc.*, 436 S.W.2d 378 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r. e.). The instant case is such an action.[1]

We have carefully considered the Dillards' motion for rehearing and find that it is without merit and should be overruled.